(September 10, 1913.)

## ESTELLA DEFFENBAUGH, Respondent, v. WASHINGTON WATER POWER CO., Appellant.

[135 Pac. 247.]

PLATTING OF LANDS—DEDICATION OF BEACH LAND—FLOODING OF LANDS
—DAMAGES CAUSED BY OVERFLOW—PERMANENT NATURE OF INJURY
—STATUTE OF LIMITATIONS.

1. Where the owner of a tract of land abutting on a lake lays it out into lots and blocks, streets and avenues, and files a plat thereof, in accordance with law, noting on the plat the lots and blocks and the dimensions of each and the streets and avenues, and between the lots nearest the water line and the water line designates a vacant strip of land varying from 25 to 100 feet in width as "beach" and "sand beach," and files with the plat a dedication of the streets and avenues, the filing of such plat and dedication does not amount to a dedication of the beach to the public as it does of the streets and avenues designated on such plat.

2. Where a dam has been erected across a stream which is the outlet to a large lake and body of water, and such dam is lawfully erected upon the premises of the owner of such dam, and a contrivance is erected upon the top of the dam so as to be raised and thereby raise the elevation of the water in the lake several feet above its usual and ordinary height, and this contrivance is raised each season for the purpose of holding the water back and maintaining it at a high-water stage during the latter part of the summer and autumn, and the same results in flooding and overflowing a sand beach used as a bathing beach during the summer season, and the owner of the beach sues for damages and alleges the flooding

and injuries as occurring periodically and the damages as accruing during a particular season of the year from year to year, *held,* that a recovery may be had for each recurring flooding and injury and that the statute for each runs from the time of the occurrence of the injury.

3. *Held,* further, that this case differs from the case of *Boise Valley Const. Co. v. Kroeger,* 17 Ida. 384, 105 Pac. 1070, 28 L. R. A., N. S., 968, and the distinction and difference between the two cases pointed out and commented upon.

4. *Held,* further, that in the present case separate recoveries might be had, and that the statute of limitations does not run for all time and against all recurring floodings and damages from the time of the infliction of the first injury or the erection of the structure which caused the flooding.

APPEAL from the District Court of the Eighth Judicial District, in and for Kootenai County. Hon. R. N. Dunn, Judge.

Action for damages.    Judgment for plaintiff.    Defendant appeals.    *Affirmed.*

John P. Gray and Frank T. Post, for Appellant.

The better rule is to allow only one recovery and permit it to embrace all damages for past, present and future injury to the property.    (*Boise Valley Construction Co. v. Kroeger,* 17 Ida. 384, 105 Pac. 1070, 28 L. R. A., N. S., 968; *Fowle v. New Haven & Northampton Co.,* 112 Mass. 334, 17 Am. Rep. 106.)

It has frequently been held with reference to the dam in controversy that but one recovery could be had for any injury to land affected by the dam.    (*Petajaniemi v. Wash. Water Power Co.,* 22 Ida. 20, 124 Pac. 783.)

The doctrine of prescription applies in this case.    (2 Farnham on Waters, pp. 1859–1861; *Mills v. Hall,* 9 Wend. (N. Y.) 315, 24 Am. Dec. 160; *Buntin v. Chicago, R. I. & P. Ry. Co.,* 41 Fed. 744; *Sanford v. Kern,* 223 Mo. 616, 122 S. W. 1051; *Williams v. Nelson,* 23 Pick. (Mass.) 141, 34 Am. Dec. 45; *Southern Ind. Ry. Co. v. Brown,* 30 Ind. App. 684, 66 N. E.

915; *Haisch v. Keokuk & D. M. R. Co.,* 71 Iowa, 606, 33 N. W. 126; *Stodghill v. Chicago, B. & A. R. Co.,* 53 Iowa, 341, 5 N. W. 495; *Zeidler v. Johnson,* 38 Wis. 335; *Call v. County Commrs. of Middlesex,* 2 Gray (Mass.), 232; *Lucas v. Marine,* 40 Ind. 289.)

Even though during seasons of each year the water has not been held upon this land by the dams or the land affected by the dams themselves, still the use has been such as to give the right thereto by prescription. (*Brand v. Lienkaemper,* 72 Wash. 547, 130 Pac. 1147.)

But one action can be maintained for such an injury. (*Gulf C. & S. F. Ry. Co. v. Moseley,* 161 Fed. 72, 88 C. C. A. 236, 20 L. R. A., N. S., 885; Gould on Waters, sec. 1416; *Central Branch Union Pac. R. Co. v. Twine,* 23 Kan. 586, 33 Am. Rep. 203; *Chicago & Alton R. Co. v. Maher,* 91 Ill. 312; *Van Schoick v. Delaware & R. Canal Co.,* 20 N. J. L. 249; *Van Orsdol v. B. C. R. & N. R. Co.,* 56 Iowa, 470, 9 N. W. 379; *Henderson v. New York Cent. R. Co.,* 78 N. Y. 423; *Rock Island Water Co. v. Tillson,* 69 Me. 255; *Powers v. Council Bluffs,* 45 Iowa, 654, 24 Am. Rep. 792; *Chicago & E. R. Ry. Co. v. Loeb,* 118 Ill. 214, 59 Am. Rep. 341, 8 N. E. 460; *St. Louis I. M. & S. Ry. Co. v. Anderson,* 62 Ark. 360, 35 S. W. 791; *Board of Directors v. Barton,* 92 Ark. 406, 135 Am. St. 191, 123 S. W. 382, 25 L. R. A., N. S., 645; *Bingham Bros. v. Port Arthur Dock & Canal Co.* (Tex. Civ. App.), 126 S. W. 324; *Gorman v. Chicago etc. R. Co.,* 166 Mo. App. 320, 148 S. W. 1009; *Chicago etc. R. Co. v. Humphreys* (Ark.), 155 S. W. 127.)

Allen & Allen and Herman H. Taylor, for Respondent.

If there has been no dedication by operation of law, there can be none unless the intention of the owner clearly appears to so dedicate. (*Smith v. Montgomery,* 3 Ida. 472, 31 Pac. 812; *San Francisco v. Grote,* 120 Cal. 62, 65 Am. St. 155, 52 Pac. 128, 41 L. R. A. 335.)

In determining the intention in this case, the court must, in connection with all the other circumstances surrounding the platting of the land, take into consideration the location of

the land. (Angell on Highways, sec. 151; *Poole v. City of Lake Forrest,* 238 Ill. 305, 87 N. E. 320; *Poole v. Commissioners of Rehoboth* (Del. Ch. 1911), 80 Atl. 683.)

Any license, permission, or agreement which the dictator may have made with those to whom she sold lots, giving them the right of ingress and egress, and the right to use the beach, is not inconsistent with an intention not to dedicate to the public. (13 Cyc. 458; see note 91.)

Nor is respondent's consent to let the public use the beach inconsistent with an intention not to dedicate. (*Village of Hailey v. Riley,* 14 Ida. 481, 95 Pac. 686, 17 L. R. A., N. S., 86.)

There is no dedication in this case, for the further reason that there has been no abandonment of the use exclusively to the community. (*Irwin v. Dixon,* 9 How. (U. S.) 31, 13 L. ed. 25; *Harding v. Jasper,* 14 Cal. 649.)

The injury is in the nature of a continuing trespass or continuing nuisance, and in such cases the statute of limitations does not bar a recovery except for damages done prior to the running of the statute. (25 Cyc. 1137-b; *Prentiss v. Wood,* 132 Mass. 486; *Harvey v. Mason City & F. D. R. Co.,* 129 Iowa, 465, 113 Am. St. 483, 3 L. R. A., N. S., 973, 105 N. W. 958; *Brisky v. Leavenworth etc. Co.,* 68 Wash. 386, 123 Pac. 519; *Shurtliff v. Extension Ditch Co.,* 14 Ida. 416, 94 Pac. 574; *Hill v. Empire State-Idaho etc. Co.,* 158 Fed. 881; *Jones v. Sanitary Dist. of Chicago,* 252 Ill. 591, 97 N. E. 210.)

If the trespass is a continuing one, then a recovery must be limited to the damages which have already been sustained, and the first action is no bar to the second, nor that to a third and so on, so long as the trespass continues. Each day's continuance of the trespass gives a new and independent action. (*Chicago & E. R. Co. v. Loeb,* 118 Ill. 203, 59 Am. Rep. 341 (note p. 354), 8 N. E. 460; *Pickens v. Coal River Boom & Timber Co.,* 66 W. Va. 10, 65 S. E. 865, 24 L. R. A., N. S., 354; *Harvey v. Mason City & F. D. R. Co.,* 129 Iowa, 465, 113 Am. St. 483, 105 N. W. 958, 3 L. R. A., N. S., 973.)

AILSHIE, C. J.—This action was commenced by the respondent to recover damages from appellant for flooding and overflowing about five acres of sand beach or bathing beach owned by her and situated along and adjacent to the waters of Lake Coeur d'Alene.

It is charged by the complaint that the damages accrued by reason and on account of the flooding and overflowing of her land for the years 1907, 1908, 1909, 1910, and 1911. It is charged by the complaint that the water was raised to a height of about five feet above the ordinary and natural height of the water in the lake, by reason of the fact that the appellant maintains a dam across the Spokane river, which is the outlet to this lake, and that on top of this dam it has erected and maintained a contrivance called a bear-trap which is raised each season for the purpose of holding the water above its ordinary height during the summer season. It is alleged that the damage in this case consisted in raising the water and flooding and overflowing the sand beach around the lake and in front of respondent's property, so as to impair respondent's property and make it less valuable for a summer resort and especially for bathing purposes and recreation and amusement. Judgment was entered in favor of the respondent herein and an appeal was thereupon prosecuted.

Two principal questions are submitted for the consideration of this court: First, has the plaintiff lost the right to maintain this action by reason of having dedicated all her right, title and interest in and to the beach lands described in her complaint to the public by reason of platting the lands and filing the plat thereof, accompanied with a dedication of the streets and avenues indicated thereon? Second, has the plaintiff been barred from recovering damages in this action by reason of the intervention of any or all of the several statutes of limitations set up as defenses in the answer, or has she lost her right to maintain the action because of any prescriptive right acquired by the water and power company?

Addressing our attention to the first proposition, it appears that the respondent laid off her lands in blocks and lots intersected by streets and avenues and filed a plat thereof in

October, 1900, with the recorder of Kootenai county, and accompanied the same with a dedication to the public of "the streets and avenues shown on the ·plat of the width as shown thereon with lots and blocks of the dimensions as shown thereon." On this plat La Delcardo Bay, an arm of Lake Coeur d'Alene, is shown, and the water line is traced showing a varying width of from 25 to possibly 50 or 100 feet from the frontage of the lot, abutting on the lake shore to the water line. The space between the lots and the water line is designated at one place as "beach" and at another place as "sand beach," but this is not named or designated as a street or avenue and not so designated or dedicated on the map. Streets running back through this land from the waterfront are designated by numbers, and a street running parallel with the waterfront is designated as an avenue. The lots are identified on the map by numbers, and the dimensions of each lot are shown on the plat. It is contended that the filing of the plat, together with the dedication annexed thereto, amounted to a dedication of the beach to the public, the same as a street or alley, and that for this reason the respondent could not maintain her action. We do not think this position is well taken. The dedication did not include the waterfront or beach, and the plat does not in any way indicate that it is dedicated to the public or that it was intended as a dedication in the same sense in which streets, alleys, and avenues are dedicated. It was evidently the purpose of the owner to show on this map to prospective purchasers the same fact which would appear on the ground, namely, that the lots had a sand or bathing beach for a lake front, and this was expected to render the lots desirable for a summer resort. We cannot think, however, it was the intention or understanding that this beach should be dedicated to the public. It was no doubt the intention and purpose of the owner of this land in platting and placing it on the market and selling lots as designated on the plat to grant a perpetual easement in this beach to the purchasers of lots, and it was expected that the privileges and advantages of the beach would serve as a special inducement to prospective purchasers.

A very similar question to this was before the chancery court of Delaware in *Poole v. Commissioners of Rehoboth* (Del. Ch.), 80 Atl. 683. The court held in that case that the filing of a plat showing lots lying along the seashore and streets thereon constitutes a dedication of the streets to the public; but that the mere fact that the plat showed the location of the ocean and the adjacent beach and the water line did not amount to a dedication of the beach to the public.

In *Poole v. City of Lake Forest*, 238 Ill. 305, 87 N. E. 320, the court held that the filing of the plat of an addition bordering on Lake Michigan, showing the lot line as coming to the top of the bluff, did not amount to a dedication of the strip of land between the top of the bluff, or the lot line and the water line, to the public.

The foregoing cases, in all their essential elements, are in point in the present case and support the position that the filing of the plat herein did not amount to dedicating the lake beach to the public.

This brings us to the question of right by prescription and the statute of limitations being a bar to the right of recovery in this case. We know of no authority which holds that a party can acquire a prescriptive right in the property of another short of the period within which the statute of limitations will run. We will, therefore, address our attention to the specific question as to the application of the statute of limitations in this case. The dam and structure which holds the water and causes the overflow complained of was erected in 1906, and has been used and in operation for the purpose of impounding and holding the water in Lake Coeur d'Alene each season since 1907. The effect of this dam is stated by appellant in its brief as follows: "The dam does not raise the water in Lake Coeur d'Alene but simply retards its waters in their runoff. In the spring during the high-water season the water is much higher. It simply tends to prevent the water from falling as rapidly as it did prior to the construction of the present dam." The water collects in Lake Coeur d'Alene from various streams emptying into it during the winter and spring until the elevation is raised six or eight feet above the

ordinary elevation of the water in the summer and fall. The purpose of this dam is to hold the water back from running off in the spring and summer so rapidly and to hold the level thereof at an elevation of 2128 feet, whereas if the flow was not so retarded by this dam and bear-trap, it would run off much more rapidly and by the middle of the summer would be reduced to an elevation of about 2121.5. Now, it is the contention of appellant that the wrong or injury inflicted from which the damages have accrued to respondent was committed at a period preceding the commencement of this action which exceeds the period of the statute of limitations, and that consequently this action is barred. Appellant insists that only one injury has been inflicted and that only one recovery can be had in an action like this, and relies upon the authority of *Boise Valley Const. Co. v. Kroeger,* 17 Ida. 384, 105 Pac. 1070, 28 L. R. A., N. S., 968. Appellant insists that the same rule has been followed in substance in *Petajaniemi v. Washington Water Power Co.,* 22 Ida. 20, 124 Pac. 783.'

Before passing to the consideration of the main question, we may refer to the Petajaniemi case, as far as it has any bearing on this question, by quoting what was said in that opinion on this particular question. The court said: "The case was tried by all parties on the theory that all the land permanently submerged below the elevation of 2,128 feet above mean sea level was for all practical purposes permanently taken, and that respondents should recover on that theory and principle of law." Of course, if the case were tried by both the plaintiff and defendant on the theory that the land had been either permanently taken and appropriated or destroyed so as to render it permanently useless to the owner, a judgment rendered and entered on that theory would preclude any future or further recovery, whether the taking or appropriation was in fact permanent and absolute or not. This is the most that can be said for that case.

The Kroeger case, however, presents a different aspect. There the railroad company had taken and appropriated a strip of Kroeger's land and built its track thereon. In so doing it had made a considerable excavation in Kroeger's land

along the course of the track and roadbed, so that this part of his land was permanently injured and destroyed so far as his use was concerned or any other use than that for railroad purposes. Had the railroad company thereafter ceased to operate its trains and abandoned the road and right of way, the land would still have been useless to Kroeger, at least until such time as he could have filled up the excavations and done a great amount of work in leveling up and restoring the land to its original condition. After reviewing a number of authorities on the question, the court concluded that this amounted to a permanent taking and appropriation of Kroeger's land and that one recovery only could be had. Another thing which should be observed is that in that case the structure or works which resulted in the taking and destruction of Kroeger's land were placed upon the land itself, and constituted a wrong and injury to Kroeger for which he might maintain an action. It was a single injury, permanent in its nature, for which complete recovery might be had in one action.

Turning to the present case, we find a state of facts in many respects dissimilar from the facts of the Kroeger case. Here the dam and bear-trap erected by appellant was on its own land and premises, and was a lawful structure many miles (perhaps 15 or 20 miles) removed from respondent's land. The dam itself did not cause this overflow. The overflow is caused only by raising what is called the bear-trap on top of the dam. Respondent could not foresee when this bear-trap was to be raised and when lowered or the season of the year at which appellant would raise it, nor could she foresee the effect it would have in flooding and overflowing her lands when it should be raised. No complaint is made by respondent in this case of the permanent flooding or permanent taking or destruction of her land. On the contrary, that idea is impliedly refuted by the complaint itself, which alleges that "said sand beach or bathing beach lands of said plaintiff prior to the acts complained of in this complaint were the principal natural attraction to visitors and summer residents at La Delcardo Bay, and were one of the principal elements

in creating and maintaining the value of the adjacent lands
for summer home purposes, and offered an excellent bathing
beach during the months of June, July and August of each
year,'' and ''that during the month of, to wit, June, 1907, and
succeeding months of said year, the defendant did, by means
of said dam, bear-trap, headgates, so obstruct the natural flow
of water of said Lake Coeur d'Alene, as to cause said water to
raise to the extent of about ten feet in height, at said dam,
and about five feet in height, in the vicinity of the lands of
plaintiff, above its natural height, thereby causing the water
of said Lake Coeur d'Alene to raise, back up and flow over
and upon about five acres of the sand beach or bathing beach
lands of the plaintiff, to the depth, to wit, of from one to five
feet, and did thereby injure and almost totally submerge and
destroy said sand beach or bathing beach lands belonging to
the plaintiff.'' The same allegation as to injury of the beach
is made with reference to the years 1908, 1909, 1910 and 1911.
It is clear from the pleading in the case that the respondent
did not proceed against appellant upon the theory that her
lands had been permanently destroyed, taken or appropriated,
nor did the appellant make any such contention itself in the
case, nor did it tender such an issue by its answer. In other
words, this case was not tried upon the theory of a permanent
and total destruction or taking of respondent's property. We
have no doubt but that appellant might have tendered an issue
such as would have resulted in assessing the damages on the
theory of a permanent flooding and appropriation of this
land, so that the one action might have precluded future ac-
tions although not altering the running of the statute of limi-
tations.

This case differs even from many of the other overflow cases
which have found their way into this court as a result of the
construction of this same dam and bear-trap. Here appar-
ently the land overflowed a bathing beach which is not used
except in the summer season. At any other season of the year
it would perhaps be of no special damage to have it overflow.
The fact that the land has been flooded and overflowed dur-
ing any previous season or number of seasons would in no

way damage or impair the usefulness of the land for a future season if the company would leave the bear-trap down and allow the water to flow off during the spring and early summer. In such event, the bathing beach would doubtless be just as good as it ever was, and no damage whatever would be sustained for that season. This is one of those cases of periodic flooding and clearly falls within the line of numerous authorities holding that periodic floodings each constitute a separate and distinct cause of action. In such case, the raising of the bear-trap and closing the headgates each season causes the injury from which the damage is sustained, and such a case differs from that of the cutting of a ditch or canal across another's land or constructing a railroad grade across it which is permanent in its nature, whereby the wrong is all done at the one time and the whole cause of action accrues at that time, and the entire recovery should be had on the one cause of action.

The distinction here noted has been considered and discussed at great length by courts and text-writers, and we shall not even attempt to review or analyze the authorities on this point, but will rather be content with citing some of the principal ones and calling attention to such decisions and authorities as contain the leading discussions on the subject.

The supreme court of Iowa, in *Harvey v. Mason City & Fort Dodge R. Co.,* 129 Iowa, 465, 113 Am. St. Rep. 483, 105 N. W. 958, 3 L. R. A., N. S., 973, has treated this subject quite learnedly, and in addition to the text of the opinion, there is an interesting note appended to the case as reported in the Lawyers' Reports, Annotated. There is also to be found a most exhaustive and interesting note to the case of *Chicago etc. R. Co. v. Loeb,* reported in 118 Ill. 203, 59 Am. Rep. 341, 8 N. E. 460. The note to this latter case deals at length with the distinction between cases where *one injury* has been inflicted and *one recovery* only can be had for a *permanent injury or destruction,* and a case where *repeated injuries* have been inflicted or a *continuing nuisance* has been maintained and *repeated trespasses* made, wherein *several and repeated actions* may be maintained and recoveries made.

There is also a very interesting note to the case of *Boise Valley Const. Co. v. Kroeger* to be found in 28 L. R. A., N. S., at page 968.   For authorities dealing with the same question, see, also, *Brisky v. Leavenworth Logging etc. Co.*, 68 Wash. 386, 123 Pac. 519; *Prentiss v. Wood*, 132 Mass. 486; 25 Cyc. 1137.

We conclude that the statute of limitations did not run from the date of the first trespass and injury against all subsequent damages and causes of action, but that *each cause of action accrued as the injury was inflicted* and consequent damage was sustained, and that the statute of limitations would run only from that time.   What has been said in effect disposes of the question of prescriptive right.

The judgment is affirmed, with costs in favor of respondent.

Sullivan and Stewart, JJ., concur.