Chief Justice EISMANN,
dissenting.
Because the majority misconstrues Idaho Code § 5-246,1 respectfully dissent.
Prior case law regarding the rights of the owner of the servient estate. “An easement is the right to use the land of another for a specific purpose that is not inconsistent with the general use of the property by the owner.” Akers v. D.L. White Constr., Inc., 142 Idaho 293, 301, 127 P.3d 196, 204 (2005). “The owner of the servient estate is entitled to use the estate in any manner not inconsistent with, or which does not materially interfere with, the use of the easement by the owner of the dominant estate.” Nampa & Meridian Irr. Dist. v. Wash. Fed. Savings, 135 Idaho 518, 522, 20 P.3d 702, 706 (2001). Another way of saying it is that “the servient estate owner is entitled to make uses of the property that do not unreasonably interfere with the dominant estate owner’s enjoyment of the easement.” Id. Thus, materially interfering and unreasonably interfering mean the same thing. The owner of the servient estate can use his property in a manner that interferes with the easement, as long as such use is not unreasonable. That has long been the law in Idaho.
In City of Bellevue v. Daly, 14 Idaho 545, 94 P. 1036 (1908), the city had a ditch easement across Daly’s property to convey drinking water. Daly’s cattle were wading in the ditch and feeding along its banks, and were polluting the water with excrement making it unfit for drinking. The city brought an action against Daly, seeking to enjoin him from permitting his cattle to range along the banks of the ditch. The trial court granted the injunction, and we reversed it on appeal. We stated, “But to say that, because this ditch runs through defendant’s field, he cannot use the field in the ordinary course of husbandry, and graze his cattle therein, is contrary to all law and every principle of justice.” Id. at 549, 94 P. at 1038. We held that the city, as the owner of the easement, had the duty to fence the cattle away from its ditch. Id. at 551, 94 P. at 1038-39.
In Pioneer Irrigation District v. Smith, 48 Idaho 734, 285 P. 474 (1930), the irrigation district had a ditch easement across Smith’s land and brought an action to enjoin him from permitting his hogs to go upon the ditch right-of-way or in the waters. It alleged that the hogs obstructed the flow of water and caused it to overflow the banks of the ditch and to flow through cuts and holes made by the hogs, causing delay and expense in delivering water. The trial court dismissed the action, and the irrigation district appealed. We held that where Smith was acting in a reasonable, ordinary, and usual manner in exercising his right to engage in farming, he was not liable for any casual damage caused to the irrigation company’s ditch. We stated:
Under all the facts disclosed by the complaint, we think defendant acted in a reasonable manner in permitting his hogs to run within his inclosure, and, as owner of the servient estate, was within his rights in not fencing them from going onto plaintiffs ditch right of way; such use being a reasonable, ordinary and usual exercise of his right to engage in farming, and not inconsistent with plaintiffs ownership of the ditch and right of way. Any casual damage resulting to the ditch from defendant’s use of his right of pasturage must necessarily be repaired by plaintiff [owner of the dominant estate].
Id. at 740, 285 P. at 476.
In West Coast Power Co. v. Buttram, 54 Idaho 318, 31 P.2d 687 (1934), the power company had an easement for a buried pipe across Buttram’s field. On a number of occasions while plowing his field in the usual manner, he struck the pipe with his plow, damaging the pipe and tearing a hole in it. He did not do so intentionally. The power company sued and obtained a judgment enjoining Buttram from in any manner plowing into the pipeline or, by plowing into it, damaging any part of it. Buttram appealed, and we reversed, holding that Buttram could not be enjoined from plowing across the pipeline in the customary manner, even if when doing so he unintentionally damaged the pipe. We stated, “Appellants are within their rights in plowing their land, in the customary manner, across respondent’s pipe line, and are not to *222 be enjoined from so doing although the plowing may result, without intention on their part, in damage to the pipe.” Id. at 326, 31 P.2d at 690.
Thus, our prior cases hold that the owner of the servient estate may use his property in the ordinary and customary manner even if it interferes with the easement of the dominant estate. The owner of the servient estate is only liable and subject to having his use enjoined if his actions unreasonably interfere with the easement.
Purpose of Idaho Code § 5-246. We held in Deffenbaugh v. Washington W. Power Co., 24 Idaho 514, 135 P. 247 (1913), and Lavin v. Panhandle Lumber Co., 51 Idaho 1, 1 P.2d 186 (1931), that a dam operator does not acquire a prescriptive easement to flood another’s property if the flooding only occurs during a portion of each year because the periodic flooding does not commence the running of the prescriptive period for future flooding. The flooding in Deffenbaugh was for a period of about six months in each of five consecutive years, and in Lavin, the flooding was for three months of thirteen consecutive years. We stated in Deffenbaugh, “We know of no authority which holds that a party can acquire a prescriptive right in the property of another short of the period within which the statute of limitations will run.” 24 Idaho at 520, 135 P. at 248. We held that the statute of limitations “did not run from the date of the first trespass and injury against all subsequent damages and causes of action, but that each cause of action accrued as the injury was inflicted and consequent damage was sustained, and that the statute of limitations would run only from that time.” Id. at 525, 135 P. at 250 (Italics in original). Therefore, the dam operator did not have a prescriptive easement to overflow the plaintiffs property. Id.
The purpose of Idaho Code § 5-246 was to permit dam operators who periodically overflow the lands of others to obtain a prescriptive easement. The title to the act stated, “Relating to limitations of actions; amending chapter 2, title 5, Idaho Code, by the addition of a new section 5-246, Idaho Code, to provide for prescriptive easements for dam operations____” Ch. 328, 1991 Idaho Sess. Laws 845, 845. Dam operators could obtain prescriptive easements under prior law in land they flooded continually, but not in the land that they flooded only periodically. Section 5-246 changed the applicable statute of limitations so that they could obtain a prescriptive overflow easement on land that they only flooded during a portion of five consecutive years. It provided:
In conformity with the limitations of actions time period set forth in sections 5-203 through 5-206, Idaho Code, the owner of a dam shall be deemed to have obtained a nonexclusive prescriptive overflow easement over real property which has been inundated or overflowed by the operations of the dam for at least a part of a year for any consecutive five (5) year period prior to commencement of an action by the property owner seeking relief inconsistent with such nonexclusive prescriptive overflow easement. Said dam owner shall be deemed to have not forfeited said nonexclusive prescriptive overflow easement if the reason for the failure to exercise the easement is a lack of water caused by drought or acts of God.
Id. at 846.
Proper construction of Idaho Code section 5-246. The second paragraph of the new statute included the following statement, “The provisions of this section shall not be construed ... to restrict any use of the underlying property for any purpose otherwise consistent with ownership thereof, even if said use interferes with the storage of water on the property.” This is simply a statement of the existing law with respect to non-exclusive easements. As shown above, our prior cases had held that the owner of the servient estate can use his property for any puipose even if it interferes with the easement. He just cannot use his property in a manner that unreasonably interferes with the easement. To permit the owner of the servient estate to unreasonably interfere with the easement would permit him to destroy the easement. There is absolutely no indication or logical reason for the legislature to enact section 5-246 in order to permit dam operators to obtain a prescriptive easement *223 by five years of periodic flooding and also provide that the owner of the servient estate can later take steps to destroy that easement, such as by building a dike to prevent the overflow or waterworks to divert or drain the water.
The question is then why would the legislature simply state existing law in the statute? The apparent reason is to prevent a misinterpretation of the statute that would give the dam operator what would be, in essence, title to the land overflowed.
This Court has recognized that “if parties agree to do so, exclusive easements can be created.” Latham v. Garner, 105 Idaho 854, 856, 673 P.2d 1048, 1050 (1983). “The grant of an exclusive easement conveys unfettered rights to the owner of the easement to use that easement for purposes specified in the grant to the exclusion of all others.” Id. The owner of the servient estate is among the “all others” excluded from using the easement. “Because an exclusive grant in effect strips the servient estate owner of the right to use his land for certain purposes, thus limiting his fee, exclusive easements are not generally favored by the courts.” Id. Therefore, although “exclusive easements are recognized servitudes on land which may be created when the parties so intend,” id. at 856-57, 673 P.2d at 1050-51, “[t]he mere use of the word ‘exclusive’ in creating an easement is not, in and of itself, sufficient to preclude use by the owner of the servient estate,” id. at 857, 673 P.2d at 1051.
Even though we had never held that an exclusive easement could be created by prescription and had stated that they were not favored by the courts, in section 5-246 the legislature four times referred to the easement that could be obtained under the statute as a “nonexclusive prescriptive overflow easement.” Ch. 328, § 1, 1991 Idaho Sess. Laws 845, 846 (emphasis added). It obviously wanted to make certain that the statute was not misconstrued as allowing the creation of an exclusive easement. That abundance of caution could also be why the legislature included the language, “The provisions of this section shall not be construed ... to restrict any use of the underlying property for any purpose otherwise consistent with ownership thereof,” id. It was again reiterating that the easement would not prevent the owner of the servient estate from using his land.
The addition of the phrase “even if said use interferes with the storage of water on the property” could also be the exercise of similar caution. It simply stated the acknowledged right of the owner of a servient estate to use his land even if it interferes with the easement. The law only prevents unreasonable interference with a nonexclusive easement. If the legislature intended that the general law applicable to easements not apply so that the owner of the servient estate could use his land in any manner, even to the extent of destroying the easement, it would have stated, “even if said use unreasonably interferes with the storage of water on the property.”
Considering the obvious purpose of the legislation and the wording of the statute, I cannot agree that the legislature intended to make it easier for the dam operator to obtain an overflow easement while permitting the owner of the servient estate to then destroy that easement by unreasonably interfering with it. For that reason, I would reverse the judgment of the district court.
Justice W. JONES concurs.