(No. 6084. April 5, 1934.)

WEST COAST POWER COMPANY, a Corporation, Respondent, v. R. E. BUTTRAM and THET BUTTRAM, His Wife, Appellants.

[31 Pac. (2d) 687.]

A. F. James, for Appellants.

Oppenheim & Lampert and Leo M. Bresnahan, for Respondent.

MORGAN, J.—Respondent brought this suit to enjoin appellants from plowing into, cutting, breaking, damaging, or in any way interfering with a wood stave pipe-line belonging to and in use by it, which crosses agricultural land belonging to and in use by them. The trial resulted in a decree "that the defendants and each of them, their agents, servants, employees, and all persons acting for them, and each of them,

be, and they are hereby enjoined and restrained from in any manner plowing into, or, by plowing into, cutting breaking or damaging any part of the pipe line of the plaintiff extending through the lands of the defendants.'' This appeal is from the decree.

The record shows appellants are the owners of 1,000 acres of land near the city of Hailey; that about 300 acres of it is in cultivation and that the pipe-line of respondent, used by it in conveying water to Hailey and its inhabitants for domestic, irrigation and municipal purposes, is laid through this cultivated land a distance of about $2\frac{1}{2}$ miles at a depth ranging from a few inches to a foot or more below the surface of the ground; that October 20, 1932, while appellant, R. E. Buttram, was plowing in the usual manner and to a depth of 6 to 8 inches, the plow point struck the pipe and tore a hole in it, and that on a number of occasions theretofore the pipe had been struck and damaged in plowing appellants' fields. It is not shown that Buttram intentionally plowed into the pipe. L. R. Gray, local manager of respondent corporation, testified on cross-examination:

"Q. You don't accuse Mr. Buttram of maliciously tearing up the pipe line, do you?

"A. No, sir."

By deed, dated September 24, 1913, Idaho State Life Insurance Company, then owner of the land now owned by appellants and the pipe-line now owned by respondent, executed a deed whereby it conveyed to Dave G. Devine, appellants' predecessor in interest, the lands through which the pipeline is constructed. That deed, after reserving a water right, contained the following:

"There is also hereby expressly reserved and excepted from this conveyance all those certain pipe lines and storage basins and rights of way therefor over and upon the lands above described, constructed or used in connection with the water system for supplying the City of Hailey and the inhabitants thereof with water for domestic, irrigation and municipal purposes, with right of ingress and egress by first

party, its successors and assigns, for repair and maintenance of all such pipe lines and storage basins."

March 11, 1930, appellants, as parties of the first part, and respondent, as party of the second part, entered into a contract with respect to the easement reserved in that deed, in which, among other things, it was recited:

"WHEREAS, a controversy has arisen between the parties as to the interpretation of the deed in the first premise above referred to, and as to rights and easements therein defined;

"WHEREAS, the party of the second part has instituted a suit in eminent domain in the District Court of the Fourth Judicial District of the State of Idaho, in and for Blaine County against the parties of the first part, and the State of Idaho, to condemn an enlarged right of way for its underground conduits through the lands of said first parties; and

"WHEREAS, the parties have agreed to compose their differences and redefine their respective rights and to that end have entered into the following conveyances and agreements;

"NOW THEREFORE, in consideration of their mutual conveyances and assurances, the parties do hereby agree as follows:

.   .   .   .   .   .   .   .   .   .   .   .

"RIGHT OF WAY FOR UNDERGROUND CONDUITS

"The parties of the first part grant to the party of the second part, its successors and assigns, a right of way across the following subdivisions: (Then follows a description of appellants' lands across which respondent's pipe-line is laid, and a description of the right of way, which is 10 feet wide on each side of a designated center line.)

.   .   .   .   .   .   .   .   .   .   .   .

"With the right to erect, construct and lay therein an underground conduit or conduits with necessary gates, valves and relief boxes, in connection with said municipal water supply system; to reconstruct, repair, maintain and operate the same; with the right of ingress to and egress from said right of way for the construction, reconstruction, repair,

maintenance and operation of said works, but subject to the payment of compensation to the parties of the first part, their heirs, executors, administrators and assigns, for any damage caused by second party, its successors and assigns to the crops or other improvements of first parties.

* * * * * * * * * * *

## "REGULATIONS OF USE

"The party of the second part agrees, in the construction, reconstruction or repair of any of its hydraulic works on or in the lands of the first parties, to compensate said parties for any damage done to their crops or improvements; to place any underground conduit laid upon said right of way so that the top thereof shall be at least twenty inches below the surface of the ground and so as not to interfere permanently with the cultivation of said land by first parties, to remove within six months from said right of way all abandoned or unused pipe, and to refill and level off any excavation made upon said right of way, so as not to interfere with the farming operations and irrigation system of first parties."

Pursuant to said contract appellants, on April 17, 1930, deeded to respondent a right of way across their lands and in said deed recited:

"With the right to erect, construct and lay therein an underground conduit or conduits with necessary gates, valves and relief boxes, in connection with said municipal water supply system; to reconstruct, repair, maintain and operate the same; with the right of ingress to and egress from said right of way for the construction, reconstruction, repair, maintenance and operation of said works."

Since the execution of the contract about 2,000 feet of the old line has been replaced with new pipe at a depth of not less than 30 inches.

The pipe-line does not follow a straight course across appellants' land and one plowing a field crossed by it has no way of knowing, at all times, when the pipe is likely to be encountered. The testimony shows it is necessary to plow

across the pipe-line in order to avoid forming a ridge which would interfere with irrigating the land.

Respondent's old pipe-line is laid at such depth and in such way that, when appellants plow their land in the customary manner, it is likely to be struck by the plow and damaged without intention on their part to damage it. Are they within their rights in so plowing across the pipe-line?

There is nothing in the deed of September 24, 1913, wherein the grantor reserved the pipe-line and right of way therefor, to indicate an intention that the grantee, his successors and assigns, should not have the use and enjoyment of the land for all purposes not inconsistent with the enjoyment of the easement, when properly exercised, in such way as not to be unnecessarily burdensome to the servient estate. Neither the contract of March 11, 1930, whereby the parties sought to "compose their differences and redefine their respective rights," nor the deed of April 17, 1930, made pursuant thereto, contains anything tending to prevent appellant from plowing across the pipe-line. On the other hand, their rights to the use of the land, occupied by the pipe-line, for agricultural purposes is recognized, and the depth at which the pipe shall be laid is so fixed in the contract that it cannot interfere with, nor be damaged by, plowing.

In *Coulter v. Sausalito Bay Water Co.*, 122 Cal. App. 480, 10 Pac. (2d) 780, 785, it is said:

"As has been said with respect to the provisions of contracts creating building restrictions claimed to be covenants running with the land, if parties desire to create mutual rights in real property they must say so and must say it in the only place where it can be given legal effect, namely, in the written instrument exchanged between them, which constitutes the final expression of their understanding . . . . ; and a provision in an instrument claimed to create such a servitude is strictly construed, any doubt being resolved in favor of the free use of the land."

The supreme court of Utah said, in *Morris v. Blunt,* 49 Utah, 243, 161 Pac. 1127, 1133:

"In construing any grant of right of way the use, in character and extent, is limited to such as is reasonably necessary and convenient to the dominant estate and as little burdensome to the servient estate as possible for the use contemplated."

The supreme court of California said, in *Parks v. Gates*, 186 Cal. 151, 199 Pac. 40, 41:

"Nothing passes by a grant of a right of way 'but that which is necessary for its reasonable and proper enjoyment.' " (Citing *Smith v. Worn*, 93 Cal. 206, 215, 28 Pac. 944, 946.)

The supreme court of Wisconsin, in *Gimbel v. Wehr*, 165 Wis. 1, 160 N. W. 1080, 1084, quoted from the syllabus in *Dyer v. Walker*, 99 Wis. 404, 75 N. W. 79, as follows:

" 'The owner of a right of way across the land of another, whether it was acquired by grant or by prescription, is entitled only to a reasonable and usual enjoyment thereof, in view of all the circumstances of the case and of the use then and theretofore made of the premises affected by it, and the owner of the soil is entitled to all the rights and benefits of ownership consistent with the easement.' "

The rule is thus stated in 19 C. J. 967, sec. 202:

"Easements by express grant or reservation must be limited to the matters contained in the deed in determining the extent of the right granted. In no case does the extent of the right acquired by grant depend upon user. The servient estate will not be burdened to a greater extent than was contemplated or intended at the time of the creation of the easement. While the grant of an easement carries with it whatever is essential to its enjoyment, nothing passes by implication as incident to the grant except what is reasonably necessary to its fair enjoyment."

In *City of Bellevue v. Daly*, 14 Ida. 545, 549, 94 Pac. 1036, 1038, 125 Am. St. 179, 14 Ann. Cas. 1136, 15 L. R. A., N. S., 992, this court said:

"But to say that because this ditch runs through defendant's field he cannot use the field in the ordinary course of

husbandry, and graze his cattle therein, is contrary to all law and every principle of justice."

In that case the court further said (14 Ida. 551, 94 Pac. 1038), quoting from Beach on Injunctions, sec. 1112, note 1:

" 'It may be stated as a general proposition that every man has a right to the natural use and enjoyment of his own property, and if, while lawfully in such use and enjoyment without negligence or malice on his part, an unavoidable loss occurs to his neighbor, it is *damnum absque injuria*, for the rightful use of one's own land may cause damage to another without any legal wrong.' "

This court said in *Coulsen v. Aberdeen-Springfield Canal Co.*, 47 Ida. 619, 630, 277 Pac. 542, 546:

"Respondent had the right to make every reasonable use of his property over which the spillway had been constructed. He had the right to cultivate his land and to graze his cattle thereon. The only limitation on this right was that no use could be made by him that would interfere with the appellant in the operation, maintenance or repair of its waste ditch. . . . . It is not necessary that the right of the owner of the servient tenement to occupy and use his land be expressly reserved to him; it is reserved unless expressly conveyed."

In *Pioneer Irr. Dist. v. Smith*, 48 Ida. 734, 738, 285 Pac. 474, 475, it is said:

"Plaintiff claims a right of way for a ditch used for the sole purpose of carrying irrigation water across defendant's land, which includes the right of entry on said land to make repairs and clean out and maintain said ditch. The owner of such an easement over lands of another is required to 'keep up, maintain, and protect' his easement or right of way, and it is his duty to protect his ditch. (*City of Bellevue v. Daly*, 14 Ida. 545, 94 Pac. 1036, 1038, 125 Am. St. 179, 14 Ann. Cas. 1136, 15 L. R. A., N. S., 992.) The owner must likewise so use his easement as not to materially interfere with the ordinary use of his land by the owner of the servient estate. (2 Kinney on Irrigation, 2d ed., p. 1756, sec. 993.) And, in the absence of limitations imposed by

contract, or otherwise, the owner of the servient estate has the undoubted right to use his land according to the ordinary course of husbandry, including the right to graze his livestock thereon. (*City of Bellevue v. Daly, supra; Keller v. Fink*, 4 Cal. Unrep. 730, 37 Pac. 411.) He may without negligence use it as 'similar land in the vicinity is ordinarily used and for which it is naturally fitted,' and repairs to the ditch made necessary by such ordinary use must be made by the ditch owner. The land owner is not liable for damages caused by ordinary use of the land by him. (*Durfee v. Garvey*, 78 Cal. 546, 21 Pac. 302.) The ditch owner cannot complain if the land owner's hogs wallow in his ditch. (*Joslin v. Sones*, 80 Iowa, 534, 45 N. W. 917.)"

Appellants are within their rights in plowing their land, in the customary manner, across respondent's pipe-line, and are not to be enjoined from so doing although the plowing may result, without intention on their part, in damage to the pipe.

The decree is reversed and the district court is directed to dismiss the suit. Costs are awarded to appellants.

Budge, C. J., and Givens, Holden and Wernette, JJ., concur.