879 P.2d 1078

The CITY OF SANDPOINT, an Idaho municipal corporation, Plaintiff–Respondent,

v.

SANDPOINT INDEPENDENT HIGHWAY DISTRICT, a political subdivision of the State of Idaho, Defendant–Appellant.

SANDPOINT INDEPENDENT HIGHWAY DISTRICT, Plaintiff–Appellant,

v.

CITY OF SANDPOINT, IDAHO, Defendant–Respondent.

Nos. 19618, 20749.

Supreme Court of Idaho, (Coeur D'Alene), May 1994 Term.

Aug. 10, 1994.

---

Bruce H. Greene, Sandpoint, for appellant.

Philip H. Robinson, Sandpoint, for respondent.

TROUT, Justice.

This is a consolidation of two appeals, both involving an ongoing dispute between the City of Sandpoint (City) and the Sandpoint Independent Highway District (Highway District) regarding their respective responsibilities for the highways within their common boundaries. In *City of Sandpoint v. Sandpoint Independent Highway District*, the parties are in disagreement over which entity is responsible for street maintenance. *Sandpoint Independent Highway District v. City of Sandpoint, Idaho* involves the question of which entity has the authority to vacate public rights of way. Both cases also involve the application of the doctrine of estoppel.

### BACKGROUND

The parties stipulated to the following facts in both cases. The City was initially organized as a village in 1900, and is presently a municipal corporation as defined by title 50, Idaho Code. The Highway District was organized on October 4, 1930, under the highway district laws of title 39, chapter 15, Idaho Code. The Highway District is the only highway district within Bonner County. The respective boundaries of the City and the Highway District are coterminous, except for a recent annexation by the City of several hundred acres. After the formation of the Highway District in 1930, the City's function with regard to the streets was limited to posting of signs, planning and layout design of new streets, construction of storm sewers, and street lighting. The Highway District from its inception has engaged in the activities of "street maintenance," consisting of reconstructing and paving streets, maintaining storm sewers installed by the City, snow plowing, grading, sweeping, patching and general maintenance. Because of the existence of the Highway District, the City has not engaged in the collection of ad valorem taxes for street construction, operation, maintenance or repair. In addition, because of the existence of the Highway District, and the District's assumption of responsibility for street maintenance within the City, the City has not, and does not, maintain a functioning street department.

The first case on appeal evolved out of a lawsuit brought by a city resident requesting declaratory relief and a writ of mandamus to compel either the City or the Highway District to maintain the streets within a newly annexed subdivision known as Loman's Subdivision. Both the City and the Highway District filed cross-claims against each other, alleging that the other entity was responsible for street maintenance. The district court granted the writ of mandamus against the Highway District, finding that the Highway District "has exclusive jurisdiction over the highways and streets within its boundaries." No appeal was taken from this decision.

During the litigation both the City and the Highway District were permitted to amend their cross-claims to enlarge greatly the scope of declaratory relief requested from the district court, asking the court to adjudicate all of their rights and responsibilities as to the streets within their common boundaries, including such matters as regulating curb cuts, sidewalk maintenance, snow plowing and tree planting. The district court undertook this monumental task and entered Findings of Fact, Conclusions of Law and Final Decree after conducting a court trial. In the written decision the district court acknowledged the broad powers vested in highway districts for general supervision of the highways as well as for construction, maintenance, repair and improvement of the highways within the district boundaries. However, the court then discussed the powers given to the cities by the Local Planning Act of 1975 and concluded:

8. The City of Sandpoint has broad authority under the Local Planning Act to adopt ordinances, standards, and plans regulating or controlling activities and projects including design and construction of streets, sidewalks, curbing, parking strips, sewers and utilities, traffic and parking controls, handicap facilities, and street lighting.

9. The Sandpoint Highway District must comply with such ordinances, standards, and plans adopted by the City of Sandpoint in the exercise of the day to day

operation of the highway district in constructing and maintaining the streets or highway [sic] within the jurisdiction of the district.

10. The highway district cannot regulate or otherwise control the City in its exercise of these broad powers.

The district court's decision in effect reduced the Highway District's authority to that of maintaining streets.

Finally, the district court briefly stated that, even in the absence of the Local Planning Act, the doctrine of estoppel would apply to prevent the Highway District from asserting it had any statutory authority to perform functions which the City had historically performed. An appeal was taken by the Highway District from that decision.

The second appeal arose from a declaratory action brought by the Highway District against the City asking for a declaration that the Highway District had sole authority to vacate public streets. The Highway District also sought an injunction to prevent the City from vacating three public rights of way. The district court denied the injunction and ruled that while the Highway District would ordinarily have sole authority to vacate public streets within its boundaries, the Highway District was estopped from asserting that right because the City had traditionally performed that function. We will address the issues presented by each appeal separately.

## I.

### CITY OF SANDPOINT V. SANDPOINT INDEPENDENT HIGHWAY DISTRICT

#### A. THE DISTRICT COURT EXCEEDED ITS AUTHORITY IN ATTEMPTING TO DETERMINE ALL OF THE PARTIES' RESPECTIVE RESPONSIBILITIES.

■ This suit originated as a request by a homeowner to have a declaration from the district court determining which of two entities had the responsibility for maintaining the street in front of his home. Thereafter, the two entities were permitted to expand the nature of the action by asking the court

in their cross-claims to adjudicate all of their respective rights and responsibilities which in any way related to the highways within their boundaries. While the parties may have found it helpful to have the court engage in this comprehensive analysis of all statutes relating to cities and highway districts, their claims far exceed the scope of the original complaint.

I.R.C.P. 13(g) provides as follows:

A pleading may state as a cross-claim any claim by one party against a co-party arising out of *the transaction or occurrence that is the subject-matter either of the original action or of a counterclaim therein or relating to any property that is the subject matter of the original action.* Such cross-claim may include a claim that the party against whom it is asserted is or may be liable to the cross-claimant for all or part of a claim asserted in the action against the cross-claimant. (Emphasis added.)

I.R.C.P. 13(g) contemplates that a party's cross-claim must have a logical relationship to the original action. It must involve many of the same factual and legal issues. *Freiberger v. American Triticale, Inc.,* 120 Idaho 239, 815 P.2d 437 (1991); *see also,* Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 1432 (1990). The rule does not provide a basis for relief when the parties desire to expand substantially the subject matter from the original action.

■ In this instance, the original action involved a determination of who should be responsible for street maintenance in a subdivision annexed by the City. A cross-claim could properly involve the question of responsibility for street maintenance as between the City and the Highway District. To the extent the district court attempted to determine responsibility for street signs and lights, regulating curb cuts and planting trees, the court erred in exceeding the permissible scope of a cross-claim. That portion of the district court's opinion is reversed and we will limit our examination to the issues relating to street maintenance.

## B. THE DISTRICT COURT ERRED IN DETERMINING THE CITY HAD SUPERIOR AUTHORITY OVER THE HIGHWAY DISTRICT.

The district court first concluded that the Highway District was the entity responsible for street maintenance and day-to-day operation of the streets. However, the court then examined the Local Planning Act of 1975, finding that it vested the City with general authority to regulate the public streets within the City limits, in essence leaving the Highway District the obligation to maintain the streets subject to the City's control.

The district court based its opinion in large part upon the Court of Appeals decision in *Worley Highway District v. Kootenai County,* 104 Idaho 833, 663 P.2d 1135 (Ct.App. 1983). For several reasons *Worley* is not persuasive authority in resolving this dispute between a city and a highway district. First of all, *Worley* involved a dispute between a highway district and a county, rather than a city. The statutes governing a city's authority over highways are completely separate and apart from those relating to counties; thus the analysis in *Worley* relies on a different statutory scheme than that involved here.

Secondly, since the issuance of *Worley,* the legislature has passed two statutes, I.C. §§ 40–1323 and 50–1330, which specifically affect the jurisdiction of the City and Highway District regarding the maintenance of public streets within their common boundaries. These are applicable to this dispute and yet could not have been considered or discussed by the Court of Appeals in *Worley.*

Finally, in *Worley* a majority of the Court of Appeals concluded that the Local Planning Act controlled over the highway district provisions, and thus, the county could control the naming of streets within its boundaries even though the highway district statutes vested general supervisory authority in the highway district. In a persuasive dissent, Judge Burnett pointed out that the purposes of the two sets of statutes are different. The Local Planning Act "dealt primarily with land use regulation, not highways." *Worley,* 104 Idaho at 838, 663 P.2d at 1140. Thus while there may be some overlap in the authority given to the county

and the highway district, the general provisions regarding land use regulation do not control over the specific authority given to highway districts to supervise and control those highways within their boundaries. We have held that when there are specific statutes addressing an issue, those statutes control over more general statutes. *E.g., Walker v. Shoshone County,* 112 Idaho 991, 739 P.2d 290 (1987). Thus, the municipal corporation statutes (title 50), and highway district statutes (title 40), control as to the issue of street maintenance, over the more general provisions of the Local Planning Act.

Having said that, it is now necessary to review the statutory provisions specifically relating to city and highway district control over highways to determine which has ultimate authority over street maintenance. I.C. § 40–1323 provides as follows:

**Cities included in highway district— Powers and duties of city council.**—(1) If any highway district shall include within its boundaries any incorporated city, or any portion of a city, the power of taxation on the part of the highway district as to ad valorem taxes, and in general all power of taxation or assessment, shall extend to and include the persons and property within the territory of the included city. The residents of the included territory shall be deemed for all purposes residents of the highway district, and entitled to vote at highway district elections to the same extent as other residents of the highway district. Nothing in this title shall be construed as affecting or impairing any power of taxation or assessment for local city highway purposes on the part of the authorities of the city of any included territory. Each incorporated city, or portion of it, within a highway district, shall constitute a separate division of the district. *The city council of each incorporated city which is included in the territory of a highway district, so far as relates to their city, shall have the powers and duties as provided by this chapter upon the commissioners of a highway district ....* (Emphasis added.)

I.C. § 50–1330 states:

**Jurisdiction of public streets and public rights of way within a highway district.**—In a county with highway districts,

the highway district board of commissioners in such district shall have exclusive general supervisory authority over all public streets and public rights of way under their jurisdiction within their district, *excluding public streets and public rights of way located inside of an incorporated city that has a functioning street department*, with full power to establish design standards, establish use standards and regulations in accordance with the provisions of title 49, Idaho Code, accept, create, open, widen, extend, relocate, realign, control access to or vacate said public streets and public rights of way. Provided, however, when said public street or public right of way lies within one (1) mile of a city, or the established county/city impact area or adjacent to a platted area within one (1) mile of the city, or the established county/city impact area, consent of the city council of the affected city shall be necessary prior to the granting of acceptance or vacation of said public street or public right of way by the highway district board of commissioners. (Emphasis added.)[1]

I.C. § 40–1323 allows the city council of an incorporated city, which is included in the territory of a highway district, to exercise the powers and duties of the commissioners of the highway district with respect to the streets within the city limits. Under I.C. § 40–1310, the commissioners of the highway district are vested with exclusive general supervision and jurisdiction over all highways within their district, with full power to construct, maintain, repair and improve all highways within the highway district. However, I.C. § 50–1330 only allows a city council to

engage in street maintenance provided it can show it has a "functioning street department."

Construing the above statutes we are bound by the principles of statutory construction. First, statutes that are *in pari materia* (of the same matter or subject), are to be construed together as one system to effect legislative intent. *Grand Canyon Dories v. Tax Comm'n*, 124 Idaho 1, 855 P.2d 462 (1993); *see also Meyers v. City of Idaho Falls*, 52 Idaho 81, 89–90, 11 P.2d 626, 629 (1932). Also, we construe statutes under the assumption that the legislature knew of all legal precedent and other statutes in existence at the time the statues were passed. *George W. Watkins Family v. Messenger*, 118 Idaho 537, 540, 797 P.2d 1385, 1388 (1990). Since I.C. § 50–1330 was added to the Idaho Code in 1983, and I.C. § 40–1323 was added in 1985, the legislature must have intended to preserve the incorporated city's ability to levy taxes and intended to preserve the city's ability to maintain streets within its city limits and to allow a city to exercise this authority only if it has a functioning street department. To interpret it otherwise would effectively make the provisions of § 50–1330 regarding incorporated cities with functioning street departments a nullity; the cities could simply proceed under § 40–1323 to assert all authority possessed by the highway district irrespective of whether the city was actually operating a street department.

In this instance, the district court specifically found the City does not have a functioning street department. Thus, reading the above statutes together, we hold that the Highway District has exclusive general

---

1. In the second regular session of 1994, the Idaho legislature amended several provisions relating to highway districts, which will take effect on July 1, 1994. They added the phrase "functioning street department" to several definitions and provided a definition of a "functioning street department."

   **40-104.** Definitions—C.
   (1) "City system" means all public highways within the corporate limits of a city, *with a functioning street department*, . . . .
   **40-109.** Definitions—H.
   (1) "Highway district system" means all public highways within each highway district, except those included within the state highway sys-

   tem, *those under another state agency*, those included within city highway systems of incorporated cities *with a functioning street department*, . . . . (emphasis appears in original bill showing newly added language).
   H.B. No. 809, ch. 324.
   **50-1301(2).** Functioning street department: A city department responsible for the maintenance, construction, repair, snow removal, sanding and traffic control of a public highway or public street system and which receives funds from the highway distribution account to local units of government pursuant to section 40-709, Idaho Code.
   H.B. No. 781, ch. 364.

supervisory authority to maintain the streets within the Highway District absent a showing by the City that it has a functioning street department.

## C. THE DISTRICT COURT ERRED IN APPLYING THE DOCTRINE OF ESTOPPEL.

As an alternative, the district court also concluded the Highway District was estopped from asserting that it had any statutory authority to perform street functions historically performed by the City. Other than reciting the functions traditionally assumed by the City, the district court did not make any factual findings which would support the application of estoppel. We believe the court erred in applying estoppel in this instance.

■ This Court has held that the doctrine of estoppel may be used against a highway district to prevent it from taking a position inconsistent with previous actions, in order to prevent manifest injustice. *Murtaugh Highway Dist. v. Twin Falls Highway Dist.*, 65 Idaho 260, 268, 142 P.2d 579, 582 (1943). However, the doctrine of quasi-estoppel requires that the offending party must have gained some advantage or caused a disadvantage to the party seeking estoppel; induced the party seeking estoppel to change its position to its detriment; and, it must be unconscionable to allow the offending party to maintain a position which is inconsistent from a position from which it has already derived a benefit. *E.g., Tommerup v. Albertson's, Inc.*, 101 Idaho 1, 6, 607 P.2d 1055, 1060 (1980). Likewise, equitable estoppel, at a minimum, requires: a concealment or misrepresentation of fact; that the party asserting estoppel not have knowledge of the true facts; and that the misrepresentation must be relied on to the party's detriment. *Id.,* 101 Idaho at 5, 607 P.2d at 1059.

■ In this case there has been no finding that the Highway District, either by conduct or concealment, led the City to believe that it could lawfully take certain actions or assume responsibility for the streets within the Highway District, nor was there a finding that the City was induced to take any actions to its detriment. Without those findings, there is no basis upon which to find estoppel, and the court erred in applying it here.

## II.

### SANDPOINT INDEPENDENT HIGHWAY DISTRICT V. CITY OF SANDPOINT

## A. THE DISTRICT COURT ERRED IN THE APPLICATION OF THE DOCTRINE OF ESTOPPEL.

■ In the second case, the district court ruled, on the Highway District's request for a declaratory judgment, that the Highway District normally would be the entity responsible for vacating streets within the common City/Highway District boundaries. However, the court once again applied the doctrine of estoppel to prevent the Highway District from asserting that statutory obligation. Again there was no reasoning or fact finding by the district court to support application of estoppel except for a finding that the City had historically performed the function of vacating streets.

For the reasons indicated in Part I.C. above, we believe the district court erred in applying estoppel in this instance where there are no findings to support its application, and the record does not support it. The district court was correct, however, in its initial pronouncement that under I.C. § 50–1330 the Highway District has exclusive power to vacate streets within its boundaries where the City does not have a functioning street department.[2] The decision of the district court is reversed to the extent that estoppel was applied to prevent the Highway District from asserting its statutory right to vacate streets.

2. We note that the final sentence of § 50–1330 seems to require the permission of a city (even without a functioning street department) before a street can be vacated, if the street is located within one mile of the city or within an established impact area. Because the record does not indicate that the streets here would meet that definition, we are not called upon to, and do not, address the question of whether the city must again have a functioning street department in order for that to apply.

### B. THERE IS NO BASIS FOR ADDRESSING THE HIGHWAY DISTRICT'S 60(b) MOTION.

 The Highway District filed a motion under I.R.C.P. 60(b) in the previous case, *The City of Sandpoint v. Sandpoint Independent Highway District*, asking the district court for relief from the judgment based upon the legislature's amendment of certain statutes applying to cities and highway districts. The district court declined to set aside the judgment and the Highway District now lists that ruling as an issue in this appeal. Given the fact that these are still two separate cases, though consolidated for appeal, we decline to reach issues in this appeal which properly should have been issues raised in the other appeal.

### CONCLUSION

In *City of Sandpoint v. Sandpoint Independent Highway Dist.*, # 19618, we hold that the district court erred by trying to adjudicate all of the respective rights and duties of the City and Highway District. Further, we reverse the district court and hold that the Highway District has the exclusive general supervisory authority to maintain the streets within the Highway District boundaries absent a showing by the City that it has a functioning street department. We further hold that the district court erred in the application of the doctrine of estoppel.

Likewise, in *Sandpoint Independent Highway Dist. v. City of Sandpoint*, # 20749, we reverse the district court and hold that the Highway District has exclusive authority to vacate public rights of way within the common boundaries where the City does not have a functioning street department.

Each party shall bear their own fees on appeal.

McDEVITT, C.J., and BISTLINE, JOHNSON and SILAK, JJ., concur.