**IN THE SUPREME COURT OF THE STATE OF IDAHO**
Docket No. 37058

| | | |
|---|---|---|
| TWIN LAKES CANAL COMPANY, an Idaho corporation, | ) ) ) | |
| Plaintiff-Appellant, | ) ) | Boise, May 2011 Term |
| v. | ) ) ) | 2011 Opinion No. 66 |
| WARREN CHOULES an individual, and SESSILEE J. CHOULES, as Trustees of the CHOULES FAMILY TRUST. | ) ) ) ) | Filed:  May 27, 2011 |
| | ) | Stephen W. Kenyon, Clerk |
| Defendants-Respondents. | ) | |

Appeal from the District Court of the Sixth Judicial District, State of Idaho, Franklin County.  Hon. Mitchell W. Brown, District Judge.

District court order dismissing preliminary injunction and damages, <u>affirmed.</u>

Holden, Kidwell, Hahn & Crapo, Idaho Falls, for appellant.  Robert L. Harris argued.

Moore, Baskin & Elia, Boise and Atkin Law Offices, Bountiful, Utah, for respondents.  Steven R. Kraft argued.

---

BURDICK, Justice

At issue in this case is the interpretation of I.C. § 5-246, which provides for obtaining prescriptive overflow easements.  Appellant Twin Lakes Canal Company (Twin Lakes) owns and operates Twin Lakes Reservoir.  Respondents Warren Choules and Sessilee J. Choules, Trustee of the Choules Family Trust, (the Choules) own property subject to a prescriptive overflow easement obtained by Twin Lakes under I.C. § 5-246 for the Twin Lakes Reservoir. On July 23, 2008, Twin Lakes filed suit against the Choules, alleging that the Choules moved earth, rocks, concrete and other debris from elsewhere on their property to areas below the height of the reservoir, which has reduced the reservoir's storage space and may have damaged the clay lining that Twin Lakes installed to plug a leak in the reservoir.  The district court determined that I.C. § 5-246 permits the Choules, as owners of servient property, to use their property in any manner consistent with ownership, despite the common law rule that generally prohibits servient

1

property owners from using the property in any manner which unreasonably interferes with the dominant estate. Accordingly, the district court dismissed Twin Lakes' counts for preliminary injunction and damages.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Twin Lakes is an Idaho Corporation that provides irrigation water to its shareholders. Twin Lakes owns and operates the Twin Lakes Canal and the Twin Lakes Reservoir, which are located in Franklin County, and Twin Lakes delivers water to approximately 25,000 acres for irrigation purposes. The Choules own real property, a portion of which is adjacent to Twin Lakes Reservoir and a portion of which overlaps with the Twin Lakes Reservoir (the Choules Property). The Twin Lakes Canal crosses the Choules Property.

The Choules sued Twin Lakes in 2004 in Franklin County Case No. CV-04-241 for various causes of action, including causes of action related to Twin Lakes' storage of water on the Choules Property and for damages relating to Twin Lakes' removal of a fence in the Twin Lakes Canal. The jury found that Twin Lakes possessed a prescriptive overflow easement to fill the Twin Lakes Reservoir to a gauge height of 75.2 on the Choules Property.

On July 28, 2008, Twin Lakes filed the Complaint, initiating this lawsuit. On August 26, 2008, Twin Lakes filed the Amended and Verified Complaint. The Amended and Verified Complaint alleges that Twin Lakes holds a prescriptive overflow easement for the Twin Lakes Reservoir and an easement to use and maintain the Twin Lakes Canal and that both the reservoir and canal are necessary for Twin Lakes to deliver irrigation water to its shareholders. Twin Lakes further alleges that at some point prior to November 2007 the Choules began using heavy equipment to move earth, rocks, concrete and other debris from areas on the Choules Property above the 75.2 gauge height to areas below the 75.2 gauge height, which: (1) reduced the volume of water storage space in the Twin Lakes Reservoir; and (2) damaged a clay lining that Twin Lakes previously installed to plug a leak in the Twin Lakes Reservoir. Twin Lakes alleges that the Choules also performed work on the Choules Property directly below the Twin Lakes Canal, which removed support material and substantially increased the risk of a canal washout. Twin Lakes also alleges that the Choules continued to perform such work and cause additional damage despite Twin Lakes' efforts to advise the Choules that their conduct infringed upon Twin Lakes' easements and despite Twin Lakes' reasonable requests that the Choules cease such work.

In the Amended and Verified Complaint, Twin Lakes seeks: (1) condemnation of the Choules Property pursuant to I.C. §§ 7-701 to -721; (2) a preliminary injunction preventing the Choules from performing earthmoving work that interferes with Twin Lakes' reservoir and canal easements during the pendency of the condemnation action; and (3) damages caused to the reservoir and the canal in an amount to be proven at trial. At a hearing on the preliminary injunction held on August 14, 2008, the Choules argued, with respect to the prescriptive overflow easement for the Twin Lakes Reservoir, that I.C. § 5-246 permits the Choules to use their property in any manner otherwise consistent with ownership, despite any impact their use may have on the reservoir, and the Choules argued that their actions are consistent with ownership. At the hearing, the district court requested that the parties submit briefs regarding I.C. § 5-246. The district court entered a Temporary Restraining Order enjoining the Choules from engaging in any further equipment work on the property until further court order.

On September 5, 2008, the Choules moved to dismiss Twin Lakes' claims for preliminary injunction and damages. The district court heard oral argument on the motion on February 12, 2009. On March 23, 2009, the district court issued its Memorandum Decision and Order. The district court denied the motion to dismiss the preliminary injunction and damages with respect to the Twin Lakes Canal; however, the district court dismissed Twin Lakes' claims for preliminary injunction and damages with respect to the prescriptive overflow easement for Twin Lakes Reservoir, holding that I.C. § 5-246 clearly and unambiguously permits servient landowners to act in any way consistent with the ownership of their property and that the pleadings fail to establish that the Choules acted inconsistently with the ownership of the Choules Property. The district court vacated the portion of the Temporary Restraining Order prohibiting the Choules from using construction equipment on the reservoir and ordered that the portion prohibiting the Choules from using construction equipment on the canal system remain in effect.

Subsequently, the parties submitted a Stipulation for Certification Pursuant to I.R.C.P. 54(b). The district court certified its Memorandum Decision and Order regarding the interpretation of I.C. § 5-246 to be final and appealable. Twin Lakes appealed to this Court.

## II. STANDARD OF REVIEW

The district court dismissed Twin Lakes' claims for preliminary injunction and damages with respect to the reservoir pursuant to I.R.C.P 12(b)(6).

3

When we review an order of the district court dismissing a case pursuant to I.R.C.P. 12(b)(6), the non-moving party is entitled to have all inferences from the record viewed in his favor. After drawing all inferences in the non-moving party's favor, we then ask whether a claim for relief has been stated. The issue is not whether the plaintiff will ultimately prevail, but whether the party is entitled to offer evidence to support the claims.

*Orthman v. Idaho Power Co.*, 126 Idaho 960, 962, 895 P.2d 561, 563 (1995) (citation and quotation omitted).

The district court dismissed Twin Lakes' claims based on its interpretation of I.C. § 5-246. "This Court freely reviews the construction of a statute." *BHC Intermountain Hosp., Inc. v. Ada Cnty.*, 150 Idaho 93, __, 244 P.3d 237, 239 (2010).

The statute is viewed as a whole, and the analysis begins with the language of the statute, which is given its plain, usual and ordinary meaning. In determining the ordinary meaning of the statute, effect must be given to all the words of the statute if possible, so that none will be void, superfluous, or redundant. However, if the language of the statute is capable of more than one reasonable construction it is ambiguous, and a statute that is ambiguous must be construed with legislative intent in mind, which is ascertained by examining not only the literal words of the statute, but the reasonableness of the proposed interpretations, the policy behind the statute, and its legislative history.

*Id.* (citations omitted).

### III. ANALYSIS

**A. Pursuant to the plain language of I.C. § 5-246, the servient landowner is permitted to use the property in any manner otherwise consistent with ownership and is not limited by the common law prohibition against uses that unreasonably or materially interfere with the dominant estate.**

It is undisputed that Twin Lakes holds a prescriptive overflow easement to fill the Twin Lakes Reservoir to a gauge height of 75.2 and that Twin Lakes obtained the easement pursuant to I.C. § 5-246. Idaho Code § 5-246, entitled "Prescriptive Overflow Easements," provides:

In conformity with the limitations of actions time period set forth in sections 5-203 through 5-206, Idaho Code, the owner of a dam shall be deemed to have obtained a nonexclusive prescriptive overflow easement over real property which has been inundated or overflowed by the operations of the dam for at least a part of a year for any consecutive five (5) year period prior to commencement of an action by the property owner seeking relief inconsistent with such nonexclusive prescriptive overflow easement. Said dam owner shall be deemed to have not forfeited said nonexclusive prescriptive overflow easement if the reason for the failure to exercise the easement is a lack of water caused by drought or acts of God.

4

It is further provided that if a dam has inundated or overflowed real property for at least a part of a year for the five (5) consecutive years prior to the enactment of this section, then the owner of the dam shall be deemed to have obtained a nonexclusive prescriptive overflow easement hereunder over said real property one (1) year after the enactment of this section, provided, no action seeking relief inconsistent with such nonexclusive prescriptive overflow easement has been commenced by the property owner within one (1) year of the enactment of this section. *The provisions of this section shall not be construed to affect the riparian and littoral rights of property owners to have access to and use of waters in this state, or to restrict any use of the underlying property for any purpose otherwise consistent with ownership thereof, even if said use interferes with the storage of water on the property.* Nothing herein shall be deemed to affect any prescriptive overflow easement that any dam owner may have previously acquired under common law. The provisions of this section shall not be construed to apply to the beds of navigable waters lying below the natural or ordinary high watermark as defined in subsection (c) of section 58-1302, Idaho Code, and subsection (9) of section 58-104, Idaho Code, or any other lands owned by the state of Idaho.

(Emphasis added).[1]

In its Memorandum Decision and Order, the district court held that I.C. § 5-246 clearly and unambiguously permits a servient estate holder to use the property for any purpose otherwise consistent with their ownership of the property. The district court then dismissed Twin Lakes' claims for preliminary injunction and damages relating to the prescriptive overflow easement, finding that the activities that Twin Lakes alleged that the Choules have undertaken are not otherwise inconsistent with the Choules' ownership of the property. On appeal, Twin Lakes challenges only the district court's interpretation of I.C. § 5-246 and argues that nothing in the plain language of I.C. § 5-246 or the legislative history shows that the statute was intended to supplant the common law rule prohibiting a servient landowner from unreasonable interference with the dominant estate and that the district court's interpretation is absurd and/or unreasonable.

1. The plain language of I.C § 5-246 alters the common law rule.

"Where the language of a statute is plain and unambiguous, this Court must give effect to the statute as written, without engaging in statutory construction." *Wheeler v. Idaho Dep't of*

---

[1] Note, the legislature has since amended I.C. § 5-246, changing only the emphasized sentence in the above quote by adding the following italicized language:

> The provisions of this section shall not be construed to affect the riparian and littoral rights of property owners to have access to and use of waters in this state, or to restrict any use of the underlying property for any purpose otherwise consistent with ownership thereof, even if said use *reasonably* interferes with the storage of water on the property*, but said use shall not unreasonably interfere with the storage of water on the property*.

2010 Idaho Session Laws, ch. 144, § 1, pp. 305–06.

*Health & Welfare*, 147 Idaho 257, 263, 207 P.3d 988, 994 (2009). "Where the clear implication of a legislative act is to change the common law rule we recognize the modification because the legislature has the power to abrogate the common law." *Baker v. Ore-Ida Foods, Inc.*, 95 Idaho 575, 583, 513 P.2d 627, 635 (1973). "It is true that, as a general principal, the rules of common law are not to be changed by doubtful implication. However, where the implication is obvious it cannot be ignored." *Statewide Constr., Inc. v. Pietri*, 150 Idaho 423, __, 247 P.3d 650, 656 (2011) (citations omitted).

As to the common law easement relationship between dominant and servient estates, this Court has explained:

> The law is well settled with respect to the correlative rights of dominant and servient owners of easements. The owner of the servient estate is entitled to use the estate in any manner not inconsistent with, or which does not materially interfere with, the use of the easement by the owner of the dominant estate. In other words, the servient estate owner is entitled to make uses of the property that do not unreasonably interfere with the dominant estate owner's enjoyment of the easement. Thus, an easement owner is entitled to relief upon a showing that he is obstructed from exercising privileges granted in the easement.

*Nampa & Meridian Irrigation Dist. v. Washington Fed. Sav.*, 135 Idaho 518, 522, 20 P.3d 702, 706 (2001) (citations omitted).

Courts must construe statutes "under the assumption that the legislature knew of all legal precedent and other statutes in existence at the time the statute was passed." *City of Sandpoint v. Sandpoint Indep. Highway Dist.*, 126 Idaho 145, 150, 879 P.2d 1078, 1083 (1994). Thus, we assume that the legislature knew when it enacted I.C. § 5-246 that the common law permits a servient landowner to freely use their property unless such use unreasonably interferes with the dominant estate. Idaho Code § 5-246 sets forth means by which one may obtain a prescriptive overflow easement and then provides that "the provisions of this section shall not be construed to . . . restrict *any use* of the underlying property *for any purpose* otherwise consistent with ownership thereof, *even if said use interferes with the storage of water* on the property." (Emphases added). This language is clear, unambiguous and in direct conflict with the common law rule prohibiting unreasonable or material interference. This language imposes no limit on the servient landowner's permitted uses of the property other than that said use be otherwise consistent with ownership. There is no language prohibiting material or unreasonable interference. Thus, the implication of the language is obvious: it supplants the common law rule.

6

"[I]t is incumbent upon a court to give a statute an interpretation that will not render it a nullity." *Hecla Mining Co. v. Idaho State Tax Comm'n*, 108 Idaho 147, 151, 697 P.2d 1161, 1165 (1985). To interpret I.C. § 5-246 as preserving the common law prohibition against unreasonable interference renders the plainly contradictory language of I.C. § 5-246 chosen by the legislature a nullity. Twin Lakes readily acknowledges that when it enacted I.C. § 5-246 the legislature altered the common law rule governing how one acquires a prescriptive overflow easement by easing the continuity element. Yet, Twin Lakes insists that the statute cannot be read to suggest that the legislature intended to alter the common law rule with respect to how a servient landowner is permitted to use the property. Twin Lakes appears to be asking this Court to either completely disregard the language concerning the servient landowner's use of the property or insert language which is not in I.C. § 5-246—a prohibition against unreasonable interference.

Had the legislature intended to preserve the common law rule limiting the servient landowner's interference with the dominant estate to reasonable interference, the legislature had two straightforward ways of doing so. First, the legislature could have simply refrained from addressing the servient landowner's interference with the dominant estate, in which case there would be no indication that the legislature intended to alter the common law rule. Second, the legislature could have inserted the common law rule into the statute. As already explained, the legislature is presumed to know the common law rule. The legislature knows how to insert the word "reasonable" and phrases like "such use shall not unreasonably interfere". Instead, the legislature authorized the servient landowner to engage in "any use of the underlying property for any purpose otherwise consistent with ownership thereof, even if said use interferes with the storage of water on the property" without imposing any further limitations.

2. The plain, unambiguous language of I.C. § 5-246 is not palpably absurd.

While this Court must ordinarily give effect to the plain, unambiguous language of a statute, "if the result is 'palpably absurd,' this Court must engage in statutory construction." *Wheeler*, 147 Idaho at 263, 207 P.3d at 994. Two related arguments put forth by Twin Lakes suggest potential absurdities in the plain language of I.C. § 5-246. First, Twin Lakes argues that by using the term "easement" in I.C. § 5-246 and by locating this statute where it did within the Idaho Code, the legislature clearly contemplated that I.C. § 5-246 creates an easement. And, according to Twin Lakes, the very definition of "easement" necessitates a dominant/servient

7

relationship whereby the rights of the dominant estate control, and if the owner of the servient estate is permitted to use the property in any manner consistent with ownership and without regard to interfering with the dominant estate, then this is not an easement. Second, Twin Lakes argues that the district court's interpretation of I.C. § 5-246 not only allows the servient landowner to unreasonably interfere with the dominant estate, as the Choules have allegedly done, but when taken to an extreme, allows the servient landowner to effectively destroy the dominant estate.

Prior to the enactment of I.C. § 5-246, dam operators could not obtain prescriptive rights to periodically flooded property because periodic flooding did not trigger the prescriptive period.

> In *Deffenbaugh v. Washington W. Power Co.*, 24 Idaho 514, 135 P. 247 (1913), and *Lavin v. Panhandle Lumber Co.*, 51 Idaho 1, 1 P.2d 186 (1931), the Court held that a dam operator who causes periodic flooding to the property of a riparian landowner does not acquire a prescriptive right to flood that property in the future. In both cases the Court denied the dam operator's easement claim by holding that flooding for only a portion of each year did not commence the running of the prescriptive period. *Deffenbaugh*, 24 Idaho at 520, 135 P. at 249-50; *see Lavin*, 51 Idaho at 5, 1 P.2d at 190.

*Baranick v. North Fork Reservoir Co.*, 127 Idaho 482, 483, 903 P.2d 71, 72 (1995) (reaffirming that periodic flooding does not constitute flooding in a continuous manner necessary to acquire the right to flood in the future).

Based on the plain language of I.C. § 5-246, it is apparent the legislature made a trade-off. The legislature relaxed the continuity element for obtaining a prescriptive overflow easement such that a dam operator need only flood property for a portion of each year for five consecutive years in order to have continuous possession of the property. By this enactment, the legislature made a conscious choice to affect the property rights of adjoining landowners whose property is flooded. It is reasonable to surmise that the legislature correspondingly wished to stop inverse condemnation suits by those landowners. Thus, at the same time, the legislature gave servient landowners more rights as to how they may use their servient estates, preserving their right to make any use of the property otherwise consistent with ownership, as opposed to only those uses that do not materially or unreasonably interfere with the dominant estate. While the plain language of I.C. § 5-246 gives servient landowners a lot of leeway to use the property, it does not render the dominant estate meaningless such that it might be considered palpably absurd that the legislature would grant such rights to servient landowners and label the arrangement an "easement." The dominant estate holder still has the right to flood the property

in the future, a right it would not have acquired without I.C. § 5-246 and a right which is akin to, despite being less than, those rights of common law easement holders.

We hold that the plain language of I.C. § 5-246 is not palpably absurd.

**B.  No attorney fees are awarded.**

The Choules request attorney fees pursuant to I.C. § 12-121.  According to the Choules, Twin Lakes pursued this appeal unreasonably and frivolously because Twin Lakes is asking this Court to disregard the plain language of I.C. § 5-246 and to apply a clearly inapplicable common law rule.  Twin Lakes argues that its appeal is reasonable because it raises significant questions of Idaho law regarding prescriptive overflow easements acquired pursuant to I.C. § 5-246, and it argues that the Choules cannot now argue that the appeal is unreasonable since they stipulated to, and did not oppose, the Rule 54(b) certification.

In any civil action, reasonable attorney fees may be awarded to the prevailing party pursuant to I.C. § 12-121, and such fees are warranted "if the appeal was brought or defended frivolously, unreasonably, or without foundation." *Crowley v. Critchfield*, 145 Idaho 509, 514, 181 P.3d 435, 440 (2007).  Attorney fees under I.C. § 12-121 are not warranted where a novel legal question is presented. *Campbell v. Kildew*, 141 Idaho 640, 651, 115 P.3d 731, 742 (2005).  Because this is a case of first impression, we decline to award the requested attorney fees.

## IV.  CONCLUSION

We affirm the district court in dismissing Twin Lakes' causes of action for preliminary injunction and damages concerning the reservoir.  Costs to the Choules.

Justice HORTON, **CONCURS.**

J. JONES, J., **specially concurring**.

I reluctantly concur in the Court's opinion because, in order to reach what I think is a correct and just outcome, we would have to rewrite the language employed by the Legislature when it enacted I.C. § 5-246 in 1991. To allow the Choules to conduct activities that interfere with Twin Lakes' reservoir and the storage of water therein is inconsistent with the traditional concept of easement rights, but the wording chosen by the Legislature, even though ill-advised, permits of no contrary reading. It seems clear that the Legislature did intend to change the common law conception of what an easement is because it provided not only that the property owner subject to a nonexclusive prescriptive overflow easement had the right to use his underlying property "for any purpose otherwise consistent with ownership thereof," but that such

usage could interfere with the storage of water on the property. As a long-time observer of legislative action in the water rights arena, it is difficult to fathom what was going through the Legislature's mind when it chose this particular wording. It may be that the Legislature was trying to address a particular situation, without realizing the future implications of its choice of wording. The language in the short title of the legislation that pertains to this provision indicates a design "TO PROTECT CERTAIN PRIVATE AND STATE PROPERTY RIGHTS." The stated desire to protect certain property rights rendered the prescriptive overflow easement rather toothless. Obviously, the Legislature realized the unfortunate implications of its wording choice in 2010, when the problem was fixed. Twin Lakes acquired its prescriptive overflow easement during the interim and is consequently visited with an unjust result that this Court is without power to remedy.

Chief Justice EISMANN, **dissenting**.

Because the majority misconstrues Idaho Code § 5-246, I respectfully dissent.

**Prior case law regarding the rights of the owner of the servient estate.** "An easement is the right to use the land of another for a specific purpose that is not inconsistent with the general use of the property by the owner." *Akers v. D.L. White Constr., Inc.*, 142 Idaho 293, 301, 127 P.3d 196, 204 (2005). "The owner of the servient estate is entitled to use the estate in any manner not inconsistent with, or which does not materially interfere with, the use of the easement by the owner of the dominant estate." *Nampa & Meridian Irr. Dist. v. Wash. Fed. Savings*, 135 Idaho 518, 522, 20 P.3d 702, 706 (2001). Another way of saying it is that "the servient estate owner is entitled to make uses of the property that do not unreasonably interfere with the dominant estate owner's enjoyment of the easement." *Id*. Thus, materially interfering and unreasonably interfering mean the same thing. The owner of the servient estate can use his property in a manner that interferes with the easement, as long as such use is not unreasonable. That has long been the law in Idaho.

In *City of Bellevue v. Daly*, 14 Idaho 545, 94 P. 1036 (1908), the city had a ditch easement across Daly's property to convey drinking water. Daly's cattle were wading in the ditch and feeding along its banks, and were polluting the water with excrement making it unfit for drinking. The city brought an action against Daly, seeking to enjoin him from permitting his cattle to range along the banks of the ditch. The trial court granted the injunction, and we reversed it on appeal. We stated, "But to say that, because this ditch runs through defendant's

10

field, he cannot use the field in the ordinary course of husbandry, and graze his cattle therein, is contrary to all law and every principle of justice." *Id*. at 549, 94 P. at 1038. We held that the city, as the owner of the easement, had the duty to fence the cattle away from its ditch. *Id*. at 551, 94 P. at 1038-39.

In *Pioneer Irrigation District v. Smith*, 48 Idaho 734, 285 P. 474 (1930), the irrigation district had a ditch easement across Smith's land and brought an action to enjoin him from permitting his hogs to go upon the ditch right-of-way or in the waters. It alleged that the hogs obstructed the flow of water and caused it to overflow the banks of the ditch and to flow through cuts and holes made by the hogs, causing delay and expense in delivering water. The trial court dismissed the action, and the irrigation district appealed. We held that where Smith was acting in a reasonable, ordinary, and usual manner in exercising his right to engage in farming, he was not liable for any casual damage caused to the irrigation company's ditch. We stated:

> Under all the facts disclosed by the complaint, we think defendant acted in a reasonable manner in permitting his hogs to run within his inclosure, and, as owner of the servient estate, was within his rights in not fencing them from going onto plaintiff's ditch right of way; such use being a reasonable, ordinary and usual exercise of his right to engage in farming, and not inconsistent with plaintiff's ownership of the ditch and right of way. Any casual damage resulting to the ditch from defendant's use of his right of pasturage must necessarily be repaired by plaintiff [owner of the dominant estate].

*Id*. at 740, 285 P. at 476.

In *West Coast Power Co. v Buttram*, 54 Idaho 318, 31 P.3d 687 (1934), the power company had an easement for a buried pipe across Buttram's field. On a number of occasions while plowing his field in the usual manner, he struck the pipe with his plow, damaging the pipe and tearing a hole in it. He did not do so intentionally. The power company sued and obtained a judgment enjoining Buttram from in any manner plowing into the pipeline or, by plowing into it, damaging any part of it. Buttram appealed, and we reversed, holding that Buttram could not be enjoined from plowing across the pipeline in the customary manner, even if when doing so he unintentionally damaged the pipe. We stated, "Appellants are within their rights in plowing their land, in the customary manner, across respondent's pipe line, and are not to be enjoined from so doing although the plowing may result, without intention on their part, in damage to the pipe." *Id*. at 326, 31 P.2d at 690.

11

Thus, our prior cases hold that the owner of the servient estate may use his property in the ordinary and customary manner even if it interferes with the easement of the dominant estate. The owner of the servient estate is only liable and subject to having his use enjoined if his actions unreasonably interfere with the easement.

**Purpose of Idaho Code § 5-246.** We held in *Deffenbaugh v. Washington W. Power Co.*, 24 Idaho 514, 135 P. 247 (1913), and *Lavin v. Panhandle Lumber Co.*, 51 Idaho 1, 1 P.2d 186 (1931), that a dam operator does not acquire a prescriptive easement to flood another's property if the flooding only occurs during a portion of each year because the periodic flooding does not commence the running of the prescriptive period for future flooding. The flooding in *Deffenbaugh* was for a period of about six months in each of five consecutive years, and in *Lavin*, the flooding was for three months of thirteen consecutive years. We stated in *Deffenbaugh*, "We know of no authority which holds that a party can acquire a prescriptive right in the property of another short of the period within which the statute of limitations will run." 24 Idaho at 520, 135 P. at 248. We held that the statute of limitations "did not run from the date of the first trespass and injury against all subsequent damages and causes of action, but that *each cause of action accrued as the injury was inflicted* and consequent damage was sustained, and that the statute of limitations would run only from that time." *Id.* at 525, 135 P. at 250 (Italics in original). Therefore, the dam operator did not have a prescriptive easement to overflow the plaintiff's property. *Id.*

The purpose of Idaho Code § 5-246 was to permit dam operators who periodically overflow the lands of others to obtain a prescriptive easement. The title to the act stated, "Relating to limitations of actions; amending chapter 2, title 5, Idaho Code, by the addition of a new section 5-246, Idaho Code, to provide for prescriptive easements for dam operations . . . ." Ch. 328, 1991 Idaho Sess. Laws 845, 845. Dam operators could obtain prescriptive easements under prior law in land they flooded continually, but not in the land that they flooded only periodically. Section 5-246 changed the applicable statute of limitations so that they could obtain a prescriptive overflow easement on land that they only flooded during a portion of five consecutive years. It provided:

> In conformity with the limitations of actions time period set forth in sections 5-203 through 5-206, Idaho Code, the owner of a dam shall be deemed to have obtained a nonexclusive prescriptive overflow easement over real property which has been inundated or overflowed by the operations of the dam for at least

12

a part of a year for any consecutive five (5) year period prior to commencement of an action by the property owner seeking relief inconsistent with such nonexclusive prescriptive overflow easement. Said dam owner shall be deemed to have not forfeited said nonexclusive prescriptive overflow easement if the reason for the failure to exercise the easement is a lack of water caused by drought or acts of God.

> > . . . .

*Id*. at 846.

**Proper construction of Idaho Code section 5-246.** The second paragraph of the new statute included the following statement, "The provisions of this section shall not be construed . . . . to restrict any use of the underlying property for any purpose otherwise consistent with ownership thereof, even if said use interferes with the storage of water on the property." This is simply a statement of the existing law with respect to non-exclusive easements. As shown above, our prior cases had held that the owner of the servient estate can use his property for any purpose even if it interferes with the easement. He just cannot use his property in a manner that unreasonably interferes with the easement. To permit the owner of the servient estate to unreasonably interfere with the easement would permit him to destroy the easement. There is absolutely no indication or logical reason for the legislature to enact section 5-246 in order to permit dam operators to obtain a prescriptive easement by five years of periodic flooding and also provide that the owner of the servient estate can later take steps to destroy that easement, such as by building a dike to prevent the overflow or waterworks to divert or drain the water.

The question is then why would the legislature simply state existing law in the statute? The apparent reason is to prevent a misinterpretation of the statute that would give the dam operator what would be, in essence, title to the land overflowed.

This Court has recognized that "if parties agree to do so, exclusive easements can be created." *Latham v. Garner*, 105 Idaho 854, 856, 673 P.2d 1048, 1050 (1983). "The grant of an exclusive easement conveys unfettered rights to the owner of the easement to use that easement for purposes specified in the grant to the exclusion of all others." *Id*. The owner of the servient estate is among the "all others" excluded from using the easement. "Because an exclusive grant in effect strips the servient estate owner of the right to use his land for certain purposes, thus limiting his fee, exclusive easements are not generally favored by the courts." *Id*. Therefore, although "exclusive easements are recognized servitudes on land which may be created when the parties so intend," *id*. at 856-57, 673 P.2d at 1050-51, "[t]he mere use of the word 'exclusive' in

13

creating an easement is not, in and of itself, sufficient to preclude use by the owner of the servient estate," *id.* at 857, 673 P.2d at 1051.

Even though we had never held that an exclusive easement could be created by prescription and had stated that they were not favored by the courts, in section 5-246 the legislature four times referred to the easement that could be obtained under the statute as a "*nonexclusive* prescriptive overflow easement." Ch. 328, § 1, 1991 Idaho Sess. Laws 845, 846 (emphasis added). It obviously wanted to make certain that the statute was not misconstrued as allowing the creation of an exclusive easement. That abundance of caution could also be why the legislature included the language, "The provisions of this section shall not be construed . . . to restrict any use of the underlying property for any purpose otherwise consistent with ownership thereof," *id.* It was again reiterating that the easement would not prevent the owner of the servient estate from using his land.

The addition of the phrase "even if said use interferes with the storage of water on the property" could also be the exercise of similar caution. It simply stated the acknowledged right of the owner of a servient estate to use his land even if it interferes with the easement. The law only prevents unreasonable interference with a nonexclusive easement. If the legislature intended that the general law applicable to easements not apply so that the owner of the servient estate could use his land in any manner, even to the extent of destroying the easement, it would have stated, "even if said use *unreasonably* interferes with the storage of water on the property."

Considering the obvious purpose of the legislation and the wording of the statue, I cannot agree that the legislature intended to make it easier for the dam operator to obtain an overflow easement while permitting the owner of the servient estate to then destroy that easement by unreasonably interfering with it. For that reason, I would reverse the judgment of the district court.

Justice W. JONES, **concurs.**

14