**IN THE SUPREME COURT OF THE STATE OF IDAHO**
**Docket No. 42675**

| | | |
|---|---|---|
| IN THE MATTER OF THE TERMINATION OF THE PARENTAL RIGHTS OF JOHN DOE (2014-25). | ) ) ) | |
| -------------------------------------------------------- | ) | |
| JOHN DOE I and JANE DOE, | ) | Boise, March 2015 Term |
| Petitioners-Respondents, | ) ) | 2015 Opinion No. 51 |
| vs. | ) ) | Filed: May 28, 2015 |
| JOHN DOE (2014-25), | ) ) | Stephen Kenyon, Clerk |
| Respondent-Appellant. | ) | |

Appeal from the District Court of the Sixth Judicial District of the State of Idaho, Bannock County.  Hon. David R. Kress, Magistrate Judge.

The magistrate court's judgment terminating Doe's parental rights is <u>affirmed</u>.

Bannock County Public Defender's Office, Pocatello, for appellant.  Rilie M. Fry argued.

Thomas D. Smith Law, PLLC, Pocatello, for respondents.  Thomas D. Smith argued.

_____

HORTON, Justice.

This is an expedited appeal from a magistrate court's judgment terminating John Doe's parental rights and allowing his son C.C. to be adopted. Doe argues that the magistrate court did not have jurisdiction to hear the case. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Doe and C.C.'s mother (Mother) are the biological parents of C.C., who was born in 2008. Doe, Mother, and C.C. are all members of the Shoshone-Bannock Tribes of the Fort Hall Reservation (Tribes). Doe and Mother were never married, but lived together sporadically during the initial portion of C.C.'s life until Mother ended the relationship in 2010.

In July of 2010, Doe shot Mother in front of C.C. Doe pleaded guilty to Attempted First Degree Murder and was sentenced to serve fifteen years, with nine years fixed. He is not eligible for parole until July of 2019. Doe has been an inmate in the custody of the Department of

Correction in Boise throughout these proceedings. The Shoshone-Bannock Tribal Court (Tribal Court), granted Mother full legal and physical custody of C.C. with no visitation rights for Doe on July, 23, 2010. The Tribal Court also entered a protection order preventing Doe from contacting Mother and C.C. until July 23, 2035.[1] Mother married C.C.'s stepfather (Stepfather) on October 15, 2010. Stepfather is also a member of the Tribes. Mother, Stepfather, and C.C. currently reside within the Fort Hall Reservation.

On February 6, 2014, Mother and Stepfather filed a petition in the Bannock County magistrate court, asking the magistrate court to terminate Doe's parental rights and allow Stepfather to adopt C.C.[2] In response, Doe repeatedly claimed that the magistrate court lacked jurisdiction and that the Tribal Court had exclusive jurisdiction over the proceedings. On March 3, 2014, Doe's sister filed a Motion to Deny and Dismiss on Doe's behalf arguing the magistrate court lacked jurisdiction. The magistrate court denied this motion and ordered Mother and Stepfather to file an amended petition and provide notice to the Tribes. On May 7, 2014, Doe filed his second motion to dismiss, alleging the magistrate court lacked subject matter jurisdiction under the Indian Child Welfare Act (ICWA), 25 U.S.C §§ 1901–1963, and alleging the Tribes had not received notice. In the meantime, on May 23, 2014, Mother and Stepfather filed their amended petition and provided notice to the Tribes. The magistrate court denied Doe's second motion to dismiss. Doe filed an answer to the amended petition on May 28, 2014, denying the magistrate court's jurisdiction. Doe also filed a motion to reconsider, arguing the Tribes had exclusive jurisdiction over the matter pursuant to 25 U.S.C. § 1911 of ICWA. The motion to reconsider was denied. Subsequently, Doe asked permission to file an interlocutory appeal on June 26, 2014. The permission for the interlocutory appeal was denied.

On July 15, 2014, the Tribes filed a petition for intervention, which was granted. The Tribes also filed a motion to dismiss for lack of jurisdiction. However, on July 30, 2014, the Tribes withdrew their motion to dismiss for lack of jurisdiction and withdrew from the proceedings.

---

[1] On November 30, 2010, the Tribes' Court of Appeals subsequently remanded the custody and protection orders finding Doe's due process rights were violated because the orders were entered without giving Doe notice and an opportunity to be heard. The record is silent as to any further activity following remand.

[2] Mother and Stepfather initiated a private termination action, in which the Idaho Department of Health and Welfare (IDHW) has not actively participated. *See* I.C. § 16-2004 ("A petition may be filed by . . . [e]ither parent when termination is sought with respect to the other parent.").

Trial was held on September 12, 2014. Regarding the conditions in Mother and Stepfather's home, an ICWA expert testified:

> . . . I wish that there were lots of homes like this, because in child protection, there's not enough Native homes. And I wish that they [had] room for 15 kids. . . . They, they do all the things that -- they really present the spirit of ICWA. You know, they provide what the child needs in that home. They have the Native customs and culture. And they're honored there and it was very impressive. I felt so good about being in that home and knowing that they have children that they are raising.

Ultimately, the magistrate court determined the requirements of ICWA were "amply satisfied" and terminated Doe's parental rights, granting leave for Mother and Stepfather to present C.C. to the magistrate court for adoption. Doe timely appealed.

## II. STANDARD OF REVIEW

"Whether a court lacks jurisdiction is a question of law that may be raised at any time . . . and over which appellate courts exercise free review." *State v. Jones*, 140 Idaho 755, 757, 101 P.3d 699, 701 (2004). The meaning and application of a statute is a question of law over which this Court exercises free review. *Idaho Dep't of Health & Welfare v. Doe*, 150 Idaho 88, 90, 244 P.3d 232, 234 (2010). "Whether the trial court correctly applied ICWA to the facts of this case is a question of law and is subject to free review by this Court." *Matter of Baby Boy Doe*, 127 Idaho 452, 456, 902 P.2d 477, 481 (1995).

## III. ANALYSIS

The magistrate court rejected all of Doe's claims that it did not have jurisdiction. The issues presented in this appeal concern whether: (1) judicial estoppel precludes Doe from challenging jurisdiction; (2) the State and the Tribes have an agreement to exercise concurrent jurisdiction under ICWA; (3) the State has concurrent jurisdiction under Idaho Code section 67-5101 and Public Law 280 over terminations of parental rights; and (4) ICWA precludes the State from exercising concurrent jurisdiction in this case because C.C. resides within the Fort Hall Reservation. We address these issues in turn.

### A. We decline to apply judicial estoppel to preclude Doe from bringing this jurisdictional challenge.

Mother and Stepfather argue that judicial estoppel should bar Doe from bringing this jurisdictional challenge because he previously challenged the Tribal Court's jurisdiction. In proceedings before the Tribes' Court of Appeals, Doe challenged the Tribal Court's jurisdiction to determine custody and enter a protective order. The Tribes' Court of Appeals issued its

decision on November 30, 2010. Doe did not prevail in this prior jurisdictional challenge, but he did prevail on a separate argument that the custody and protection orders were entered in violation of due process.

"Judicial estoppel precludes a party from advantageously taking one position, then subsequently seeking a second position that is incompatible with the first." *McCallister v. Dixon*, 154 Idaho 891, 894, 303 P.3d 578, 581 (2013). This Court has described judicial estoppel as the principle "that a litigant who obtains a judgment, advantage, or consideration from one party through means of sworn statements is judicially estopped from adopting inconsistent and contrary allegations or testimony, to obtain a recovery or a right against another party, *arising out of the same transaction or subject matter*." *In re Pangburn*, 154 Idaho 233, 241, 296 P.3d 1080, 1088 (2013) (quoting *Heinze v. Bauer*, 145 Idaho 232, 235, 178 P.3d 597, 600 (2008)). The custody and protective order proceedings before the Tribal Court are distinct from this action to terminate Doe's parental rights. Moreover, Doe gained no advantage in the earlier proceeding, as his claim that the Tribal Court lacked jurisdiction was not successful. Thus, we decline to apply judicial estoppel.

## B. We do not find sufficient evidence of an agreement, under 25 U.S.C. § 1919(a), between the Tribes and the State to exercise concurrent jurisdiction.

As another defense to Doe's jurisdictional challenge, Mother and Stepfather argue that the Tribes and the State "have at least an implicit agreement to share concurrent jurisdiction," evidenced by the Tribes' decision to withdraw, that would authorize the State's exercise of jurisdiction under ICWA. 25 U.S.C. § 1919. In reply, Doe argues this Court should not imply an agreement between the Tribes and the State because nothing in the record shows why the Tribes withdrew.

ICWA provides a mechanism for "Agreements between States and Indian tribes:"

States and Indian tribes are authorized to enter into agreements with each other respecting care and custody of Indian children and jurisdiction over child custody proceedings, including agreements which may provide for orderly transfer of jurisdiction on a *case-by-case basis* and *agreements which provide for concurrent jurisdiction between States and Indian tribes*.

25 U.S.C. § 1919(a). The Nevada Supreme Court, in *In re Parental Rights as to S.M.M.D.*, considered a jurisdictional challenge under ICWA when reservation-domiciled Native American children were removed from their mother. 272 P.3d 126, 128 (Nev. 2012). The tribe and the state of Nevada notified the trial court of a "joint decision" to continue with Nevada maintaining

4

jurisdiction and the tribe "being a co-agent and lending support." *Id.* However, there was no written agreement between the tribe and Nevada. *Id.* at 132 n. 6. The Nevada Supreme Court determined that 25 U.S.C. § 1919(a) was meant to be broad, looking to 25 U.S.C. § 1919(a)'s legislative history. *Id.* at 133. Ultimately, the Nevada Supreme Court determined the "joint decision" between the tribe and Nevada constituted a case-by-case agreement as contemplated by 25 U.S.C. § 1919 and found concurrent jurisdiction between Nevada and the tribe. *Id.*

The present case is not similar. Nothing in the record indicates why the Tribes withdrew. Unlike the "joint decision" in *In re Parental Rights as to S.M.M.D.*, the record in this case is silent as to why the Tribes abandoned their initial position that the magistrate court lacked jurisdiction and withdrew from the action. We are unable to infer an agreement from silence. Therefore, there is no basis for determining the existence of an agreement to exercise concurrent jurisdiction under 25 U.S.C. § 1919(a).

## C. Public Law 280 and Idaho Code section 67-5101(C) provide the State with concurrent jurisdiction in this termination proceeding.

Doe argues the Tribes have exclusive jurisdiction for multiple reasons, including his argument that Public Law 280 and the State's assumption of jurisdiction under Idaho Code section 67-5101 do not provide jurisdiction for this private termination proceeding. In response, Mother and Stepfather argue that Public Law 280 and Idaho Code section 67-5101 expressly provide the State with concurrent jurisdiction. In particular, they argue that the State's assumption of jurisdiction in Idaho Code section 67-5101(C) over "Dependent, neglected and abused children" provides for concurrent jurisdiction in this case.

"Indian country" is a term in federal law that includes "all land within the limits of any Indian reservation." 18 U.S.C. § 1151. Generally, jurisdiction in Indian country is derived from Congress but this is not always the case. *Knox v. State ex rel. Otter*, 148 Idaho 324, 332, 223 P.3d 266, 274 (2009) (citing *California v. Cabazon Band of Mission Indians*, 480 U.S. 202, 215 (1987) *superseded by statute on other grounds*).

"Public Law 280 represents the primary expression of federal policy governing the assumption by States of civil and criminal jurisdiction" in Indian country. *Id.* at 330, 223 P.3d at 272 (quoting *Three Affiliated Tribes of Fort Berthold Reservation v. Wold Engr.*, 476 U.S. 877, 884 (1986)). Public Law 280 originally conferred jurisdiction over criminal cases to California, Minnesota, Nebraska, Oregon, and Wisconsin for "offenses committed by or against Indians in the areas of Indian country [listed in the statute] to the same extent that such State has

5

jurisdiction over offenses committed elsewhere within the State" and civil jurisdiction over "civil causes of action between Indians or to which Indians are parties which arise in the areas of Indian country [listed in the statute] to the same extent that such State has jurisdiction over other civil causes of action." Pub. L. No. 83-280, § 1162, 67 Stat. 588, 588–89 (1953) (codified with subsequent revisions at 18 U.S.C. § 1162). Regarding other states, the act stated "[t]he consent of the United States is hereby given to any other State not having jurisdiction . . . to assume jurisdiction at such time and in such manner as the people of the State shall, by affirmative legislative action, obligate and bind the State to assumption thereof." Pub. L. No. 83-280, § 1360, 67 Stat. 588, 590 (1953) (repealed 1968). Thus, Public Law 280 initially granted jurisdiction to five "mandatory states" and permitted other states to "opt-in" to obtain jurisdiction in Indian country. *Idaho Tribal-State Court Bench Book*, Idaho Supreme Court, p. 16–17 (2014 ed.) *available at* https://www.isc.idaho.gov/tribal/TSC_Bench_Book_2014.pdf.

Idaho became an opt-in state in 1963 with the passage of Idaho Code sections 67-5101 through 5103.[3] Under Idaho Code section 67-5101, the State assumed jurisdiction over certain matters by providing:

> The state of Idaho, in accordance with the provisions of [Public Law 280] hereby assumes and accepts jurisdiction for the civil and criminal enforcement of state laws and regulations concerning the following matters and purposes arising in Indian country located within this state, as Indian country is defined by title 18, United States Code 1151, and obligates and binds this state to the assumption thereof:
>
> A. Compulsory school attendance
>
> B. Juvenile delinquency and youth rehabilitation
>
> C. Dependent, neglected and abused children
>
> D. Insanities and mental illness
>
> E. Public assistance
>
> F. Domestic relations
>
> G. Operation and management of motor vehicles upon highways and roads maintained by the county or state, or political subdivisions thereof.

---

[3] In 1968 Congress passed the Indian Civil Rights Act, which repealed the provision allowing states to opt-in and obtain jurisdiction in Indian country. *State v. Michael*, 111 Idaho 930, 932, 729 P.2d 405, 407 (1986). However, the repeal of the opt-in provision did not rescind jurisdiction that states had already assumed. *Id.* Thus, Idaho Code section 67-5101 remains valid law. *Id.*

Mother and Stepfather argue subsections B, C, and F could cover termination of parental rights cases. Because our analysis of subsection C is dispositive, we do not consider subsections B and F.

"The objective of statutory interpretation is to give effect to legislative intent." *State v. Yzaguirre*, 144 Idaho 471, 475, 163 P.3d 1183, 1187 (2007). "Because 'the best guide to legislative intent is the words of the statute itself,' the interpretation of a statute must begin with the literal words of the statute." *Id.* (quoting *In re Permit No. 36–7200*, 121 Idaho 819, 824, 828 P.2d 848, 853 (1992)). When language is unambiguous, there is no reason for a court to consider rules of statutory construction. *Idaho Youth Ranch, Inc. v. Ada Cnty. Bd. of Equalization*, 157 Idaho 180, 184–85, 335 P.3d 25, 29–30 (2014). A statute is ambiguous when:

> [T]he meaning is so doubtful or obscure that reasonable minds might be uncertain or disagree as to its meaning. However, ambiguity is not established merely because different possible interpretations are presented to a court. If this were the case then all statutes that are the subject of litigation could be considered ambiguous . . . . [A] statute is not ambiguous merely because an astute mind can devise more than one interpretation of it.

*Farmers Nat. Bank v. Green River Dairy, LLC*, 155 Idaho 853, 856, 318 P.3d 622, 625 (2014) (alternations in original) (quoting *BHA Invs., Inc. v. City of Boise*, 138 Idaho 356, 358, 63 P.3d 482, 484 (2003)).

This Court has not specifically addressed subsection C, "Dependent, neglected and abused children." In *Sheppard v. Sheppard,* this Court held subsection F ("Domestic relations") conferred jurisdiction over an action for divorce and division of community property because those subjects are addressed by Title 32 of the Idaho Code, entitled "Domestic Relations." 104 Idaho 1, 13, 655 P.2d 895, 907 (1982). Thus, in *Sheppard* the Court looked to the title of other code sections to determine the scope of another Idaho Code section 67-5101 subsection. *Id.*

Doe relies on *Sheppard*, arguing that the legislature would have labeled subsection C "Juvenile proceedings" (the title of Idaho Code Title 16) if it meant for the subsection to confer jurisdiction over all subjects within that Title. Doe also argues that the terms "Dependent, neglected and abused children" bears more relation to the Child Protective Act (I.C. §§ 16-1601 through 16-1643) than it does to Idaho's termination statute (I.C. §§ 16-2001 through 16-2015). However, "[c]ourts must construe statutes 'under the assumption that the legislature knew of all legal precedent and other statutes in existence *at the time* the statute was passed.' " *Twin Lakes Canal Co. v. Choules*, 151 Idaho 214, 218, 254 P.3d 1210, 1214 (2011) (quoting *City of*

*Sandpoint v. Sandpoint Indep. Highway Dist.*, 126 Idaho 145, 150, 879 P.2d 1078, 1083 (1994)); *see also Idaho Mut. Ben. Ass'n v. Robison*, 65 Idaho 793, 799, 154 P.2d 156, 159 (1944) ("The legislature in passing a statute is presumed to have in mind the law that exists *at the time* the legislature enacts the statute.").

Idaho Code section 67-5101 was approved on March 6, 1963. At that time, Chapter 16 of Title 16 of Idaho's Code was titled "*Dependent children*—Powers of benevolent societies."[4] I.C. §§ 16-1601–1623 (1948); 1963 Idaho Sess. L. ch. 58, p. 226; *see also* 1919 Idaho Sess. L. ch. 161, p. 519–21 (repealed 1963 Idaho Sess. L. ch. 321, p. 919). This chapter gave "[a]ny person" the power to file a petition showing that a child should "be taken from their parents, guardian or custodian and placed under the guardianship of some reputable person of good moral character or some suitable institution." I.C. § 16-1604 (1948). Under this chapter, courts could enter an "[o]rder for commitment," which caused the child to be taken from its parents and placed in the guardianship of another person until: (1) good cause was shown that the child should be returned to its parents; (2) or three months (which could be extended to six months) had passed, after which an "order for permanent adoption" could be made. I.C. § 16-1608 (1948). The chapter also provided:

> Any benevolent or charitable society incorporated under chapter 11 of title 30, all the officers and agents of said society to be residents of the state of Idaho, and having for its object the receiving, aiding, caring for, placing out for adoption and consenting to adoption or improving the condition of the orphan, homeless, *neglected or abused children* of this state, shall have authority to receive, control, train, educate, aid, care for, dispose of, place out for adoption and consent to the adoption of children under eighteen years of age under the following provisions:
>
> 1. [When the parents consent]
> 2. When there is in the county any child under the age of eighteen years:
>
> [conditions such as abandonment, neglect, and abuse]

I.C. § 16-1601 (1948). Thus, at the time that Idaho Code section 67-5101 was enacted, the portion of the Idaho Code dealing with termination of parental rights was, in part, titled "Dependent children" and provided for termination in cases of "neglected or abused children." *Id.* Because Idaho Code section 67-5101(C)'s language providing for jurisdiction over

---

[4] On March 19, 1963, the legislature adopted the forerunner of Idaho's present statute governing termination of parental rights, to become effective on August 1, 1963. 1963 Idaho Sess. L. ch. 145, p. 420–30. On March 29, 1963, the legislature repealed the prior versions of Idaho Code sections 16-1601 through 16-1623. 1963 Idaho Sess. L. ch. 321, p. 919.

"Dependent, neglected and abused children" plainly references the version of the termination statute that existed at the time, we hold Idaho Code section 67-5101(C) provides the State with concurrent jurisdiction in parental rights termination cases.

Our decision is buttressed by the decisions of other courts.[5] The Ninth Circuit read "Dependent, neglected and abused children" to include child dependency proceedings when referencing the statute. *Doe v. Mann*, 415 F.3d 1038, 1052 n.19 (9th Cir. 2005). Moreover, in *Comenout v. Burdman*, the Supreme Court of Washington, another opt-in state, read R.C.W. 37.12.010's subsection 7, which assumed jurisdiction over "Dependent children" to give Washington jurisdiction to terminate the parental rights of tribal members residing on a reservation. 525 P.2d 217, 222 (Wash. 1974).

We hold that Public Law 280 and Idaho Code section 67-5101 provide the State with concurrent jurisdiction over cases involving the termination of parental rights.

## D. Public Law 280 and Idaho Code section 67-5101(C) constitute an exception to ICWA's exclusive jurisdiction mandate.

On appeal, Doe argues the Tribes have exclusive jurisdiction because, under ICWA, tribes have exclusive jurisdiction over children who reside within reservation boundaries and in this case C.C. resides on the Fort Hall Reservation. Mother and Stepfather counter that Public Law 280 and the State's assumption of jurisdiction under it constitute an exception to ICWA's exclusive jurisdiction provision.

In *Matter of Baby Boy Doe* this Court outlined the purpose for enacting ICWA:

> In 1978 Congress passed ICWA to address concerns surrounding the high incidence of removal of Indian children from their Indian families and tribes and the placement of Indian children in adoptive or foster homes outside of their extended families, tribes and cultures. 25 U.S.C. §§ 1901, 1902. ICWA recognizes that cultural biases in child custody proceedings contribute to this problem. To promote the stability of Indian tribes and to counter cultural biases, Congress enacted ICWA to provide minimum procedural and substantive requirements which state courts must apply to child custody proceedings involving Indian children.

---

[5] Doe cites *Fisher v. Dist. Court*, 424 U.S. 382 (1976) and *Matter of Adoption of Buehl*, 555 P.2d 1334 (Wash. 1976), arguing these two cases indicate tribes always have exclusive jurisdiction over child custody proceedings involving reservation-domiciled children because a contrary holding would infringe on tribal sovereignty. However, these cases are irrelevant because neither involved Public Law 280. Both cases involved tribes in Montana that were not subject to Public Law 280.

123 Idaho 464, 468, 849 P.2d 925, 929 (1993). Under ICWA, "An Indian tribe shall have jurisdiction exclusive as to any State over any child custody proceeding involving an Indian child who resides or is domiciled within the reservation of such tribe, *except where such jurisdiction is otherwise vested in the State by existing Federal law*." 25 U.S.C. § 1911(a).

Idaho courts have not yet addressed whether Public Law 280 is an "existing Federal law" that vested the State with concurrent jurisdiction over child custody proceedings involving Native American children. However, the Ninth Circuit has determined that the exclusive jurisdiction provisions of ICWA do not displace concurrent state court jurisdiction under Public Law 280. *Mann*, 415 F.3d at 1049. There, a mother challenged a California state court's jurisdiction to terminate her parental rights to a reservation-domiciled Native American child in proceedings initiated by a state agency. *Id.* at 1039–40. The Ninth Circuit conducted a detailed analysis of the interplay between ICWA and Public Law 280, ultimately deciding Public Law 280 constituted an "unambiguous" exception to ICWA. *Id.* at 1068. The Ninth Circuit noted:

> From an ultimate perspective of public policy and in furtherance of the goal of tribal sovereignty over the destiny of Indian children, a transition from Public Law 280 jurisdiction to tribal jurisdiction in child custody proceedings may well be appropriate. But we believe this is a judgment for Congress to make, not the courts.

*Id.*

The Ninth Circuit's decision was based upon the unambiguous text and structure of ICWA and bolstered by ICWA's legislative history. *Id.* at 1061–66. Regarding ICWA's text, the Ninth Circuit found ICWA referenced Public Law 280 in two places. *Id.* at 1061. First, the Ninth Circuit decided ICWA explicitly recognized Public Law 280 in 25 U.S.C. 1911(a), where Congress limited tribal jurisdiction "where such jurisdiction is otherwise vested in the State by existing Federal law." *Id.* Second, the Ninth Circuit discussed Congress's recognition of Public Law 280 in 25 U.S.C. § 1918(a), which provides:

> Any Indian tribe which became subject to State jurisdiction pursuant to the provisions of the Act of August 15, 1953 (67 Stat. 588), as amended by Title IV of the Act of April 11, 1968 (82 Stat. 73, 78) [Public Law 280], or pursuant to any other Federal law, may *reassume* jurisdiction over child custody proceedings. Before any Indian tribe may reassume jurisdiction over Indian child custody proceedings, such tribe shall present to the Secretary for approval a petition to reassume such jurisdiction which includes a suitable plan to exercise such jurisdiction.

This provision allows tribes to reassume jurisdiction in child custody proceedings by petitioning the Secretary of the Interior. 25 U.S.C. § 1918(a). The Ninth Circuit determined that through Congress's use of the term "reassume," "Congress manifested its awareness that Public Law 280 states would continue to exercise jurisdiction over child custody proceedings." *Mann*, 415 F.3d at 1061. It also found: "Section 1918(a) would make little sense unless § 1911(a) permits Public Law 280 states to exercise jurisdiction over child custody proceedings." *Id.* at 1062.

We find this reasoning to be persuasive and determine that Public Law 280 and Idaho Code section 67-5101 constitute an exception to ICWA's exclusive jurisdiction mandate. Thus, we reject Doe's argument that the magistrate court erred in exercising jurisdiction in this case.

## IV. CONCLUSION

We affirm the magistrate court's judgment terminating Doe's parental rights and granting leave to present C.C. for adoption. We award costs to respondents.

Chief Justice BURDICK and Justices EISMANN, J. JONES and W. JONES **CONCUR**.