IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 50023

| In the Interest of: Jane Doe I, | ) | |
|---|---|---|
| A Child Under Eighteen (18) Years of Age. | ) | |
| -------------------------------------------------- | ) | |
| STATE OF IDAHO, DEPARTMENT OF | ) | |
| HEALTH AND WELFARE, | ) | |
| | ) | **Boise, December 2022 Term** |
| Petitioner-Respondent, | ) | |
| | ) | **Opinion filed: March 2, 2023** |
| v. | ) | |
| | ) | **Melanie Gagnepain, Clerk** |
| JANE DOE (2022-36), | ) | |
| | ) | |
| Respondent-Appellant. | ) | |
| _____ | ) | |

Appeal from the District Court of the Second Judicial District of the State of Idaho, Nez Perce County, Jay Gaskill, District Judge and Victoria Olds, Magistrate Judge.

The decision of the district court is affirmed.

Sarah A. McDowell-Lamont, Public Defender, Lewiston, for Appellant. Sarah A. McDowell-Lamont argued.

Raúl R. Labrador, Idaho Attorney General, for Respondent. Briana Allen argued.

Jones, Brower & Callery, PLLC, Lewiston, for Respondent GAL.

_____

BRODY, Justice

This appeal addresses the district court's jurisdiction to hear an appeal challenging the magistrate court's decision to change the permanency goals in a Child Protective Act ("CPA") proceeding.

Jane Doe, a three-year-old child, has been in the custody of the Idaho Department of Health and Welfare (the "Department") since late 2020. She was six days shy of her first birthday when the State removed her from the custody of her mother and placed her with a foster family. Her mother's attempts to stick to a permanency plan have been inconsistent, and while for the majority of the life of this case the magistrate court held fast to a permanency goal of reunification, it modified that goal in the summer of 2022 so that termination of parental rights and adoption

1

became the primary goals for Jane and reunification became the concurrent goal.

Mother filed a notice of appeal to the district court challenging the review hearing order in which the permanency goals were changed. She also filed a motion for permissive appeal requesting permission from the magistrate court to appeal to the district court. The magistrate court granted the motion. The district court dismissed the case and remanded it back to the magistrate court *sua sponte* after determining it did not have jurisdiction to hear the appeal. This appeal followed. We affirm the decision of the district court.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

In December 2020, law enforcement officers in Lewiston, Idaho removed Jane Doe from Mother's custody. When the officers intervened, Jane and her Mother were staying at a motel and Mother appeared to be having a "mental health situation," after chopping up her hotel room mattress with a small hatchet because she believed people were calling out from under the bed. Since that time, Jane has primarily resided with the same foster family and has mostly thrived under their care. Mother, on the other hand, has struggled to show a consistent commitment to her treatment plan for the dual diagnosis of mental illness and substance abuse.

Initially, the primary permanency goal was reunification of Mother and Jane, while the concurrent goals were termination of Mother's parental rights and adoption within twenty-four months. However, in June 2022, about eighteen months after Jane was initially placed in shelter care, circumstances changed. The magistrate court, after conducting an evidentiary hearing, issued a review hearing order which changed the primary goals to termination of parental rights and adoption and made reunification a concurrent goal. The magistrate court's decision was based on several factors: the inconsistency of Mother's efforts to stick to her case plan, the fact that she had left a substance abuse treatment facility after completing only one phase of a four-phase program, purportedly to pursue a housing voucher but had yet to secure housing, that Mother remained unemployed, that Jane was thriving after nearly a year and a half in foster care, and reunification did not appear to be imminent.

Following entry of the review hearing order, Mother filed a motion for permissive appeal with the magistrate court and a notice of appeal to the district court challenging the magistrate court's finding that the Department had made reasonable efforts toward reunification and changing the case plan's goals from reunification to termination of parental rights and adoption. Shortly thereafter, the magistrate court granted the permissive appeal to the district court.

Before the parties submitted their briefs, the district court entered an order dismissing the appeal and remanding the case to the magistrate court after concluding that it lacked jurisdiction. Specifically, the district court found that the review hearing order did not meet the criteria for an appeal set forth in Idaho Code section 16-1625(1) and was not the proper subject of a permissive appeal because it did not constitute a "final judgment." The district court subsequently denied a motion for reconsideration, acknowledging in a footnote that the conclusion it reached was contrary to a non-binding, unpublished Court of Appeals' decision and that this case presented an important issue that needed to be addressed by this Court to bring clarity to appeal rights in CPA cases statewide.

This appeal followed the district court's decision. Both parties take the position that the district court erred when it dismissed Mother's appeal, although they disagree as to which statutory subsection provides the correct procedural avenue for the appeal. Today, we hold the district court did not err when it dismissed Mother's appeal because none of the statutory provisions at issue confer jurisdiction upon the district court to review the order changing permanency goals. We have also referred this matter to the Child Protection Committee to consider whether any changes should be made to the permissive appeal standard set forth in Idaho Appellate Rule 11.1(b)(2).

## II.     ANALYSIS

**A.  The district court did not err when it dismissed Mother's appeal because the review hearing order does not fall within the scope of reviewable orders under Idaho Code section 16-1625(1)(a)-(d).**

Both parties take the position that the district court erred when it dismissed Mother's appeal due to lack of jurisdiction; they only disagree about the legal basis of jurisdiction. Whether a court lacks jurisdiction is a question of law that is freely reviewed by this Court. *Doe v. Doe*, 158 Idaho 614, 616, 349 P.3d 1205, 1207 (2015). Importantly, even if all parties to an action agree, they cannot confer or create subject matter jurisdiction upon a court if in fact it does not exist. *Fairway Dev. Co. v. Bannock Cnty.*, 119 Idaho 121, 125, 804 P.2d 294, 298 (1990). Therefore, notwithstanding the parties' agreement to the contrary, we hold the district court correctly dismissed Mother's appeal due to lack of appellate jurisdiction.

The Idaho Juvenile Rules govern the procedures that apply to CPA proceedings. I.J.R. 1. Juvenile Rule 49 governs appeals as a matter of right to the district court and incorporates the statutory appeal framework set forth in Idaho Code section 16-1625:

*An aggrieved party may appeal to the district court those orders of the court in a C.P.A. action specified in I.C. § 16-1625*. A party may also seek a permissive appeal to the Supreme Court pursuant to Idaho Appellate Rule 12.1.

I.J.R. 49(a) (emphasis added).

Section 16-1625 sets forth four separate orders or decrees that can be appealed to the district court as a matter of right:

(1) *An aggrieved party may appeal the following orders or decrees of the court to the district court*, or may seek a direct permissive appeal to the supreme court as provided by rules adopted by the supreme court:

(a)  An adjudicatory decree entered pursuant to section 16-1619, Idaho Code;

(b) *Any order subsequent to the adjudicatory decree that vests legal custody of the child in the department or other authorized agency*;

(c)  *Any order subsequent to the adjudicatory decree that authorizes or mandates the department to cease reasonable efforts to make it possible to return the child to his home, including an order finding aggravated circumstances*; or

(d)  An order of dismissal.

I.C. § 16-1625(1)(a)-(d) (emphasis added). Mother contends that her appeal to the district court was proper under subsection (c), but the Department contends the appeal was proper under subsection (b). Given the parties' respective positions, the question of whether the district court had jurisdiction to hear Mother's appeal turns on whether a review hearing order is an order that "vests" legal custody of the child in the Department after an adjudicatory decree, or whether it authorizes or mandates the Department to cease reasonable efforts toward reunification. Because an order issued following a review hearing does none of these things, we hold the requirements of section 16-1625 have not been met and the district court correctly concluded it did not have appellate jurisdiction.

**1. Custody vests with the Department at the time an adjudicatory decree is issued, not when the permanency goals change.**

To initiate a CPA proceeding, the Department must create and file a petition with the magistrate court. I.C. § 16-1610(1). Within thirty days of filing the petition, the court must set an adjudicatory hearing to determine whether it has jurisdiction over the child under Idaho Code section 16-1603. I.C. § 16-1619(1). If the magistrate court determines that it has jurisdiction over the child, it can either place the child under protective supervision of the Department (which means the child can remain in the home subject to Department oversight) or "vest" legal custody of the

4

child in the Department or another authorized agency. I.C. § 16-1619(5). An adjudicatory decree which vests custody of the child in the Department is an appealable order under Idaho Code section 16-1625(1)(a).

Section 16-1625(1)(b), the provision the Department contends gives the district court appellate jurisdiction in this case, exists because custody of a child involved in a CPA proceeding is not necessarily static. For example, at the time the adjudicatory decree is entered the magistrate court may make the decision to allow a child to remain in the home subject to the Department's protective supervision. Certainly, the parent has the right to challenge the entry of that decree under subsection 16-1625(1)(a). However, if protective supervision fails and the child is taken into the State's custody, another hearing must take place and the magistrate court must once again make the decision whether to "vest" custody of the child in the Department. I.C. § 16-1623(4)-(5). If the magistrate court makes that decision, such an order would be appealable under section 16-1625(1)(b).

In this case, the magistrate court had already "vested" legal custody of Jane in the Department when it entered the adjudicatory decree on February 16, 2020. The adjudicatory decree stated: "The child is placed in the legal custody of IDHW." Mother had the right to challenge the entry of that decree under Idaho Code section 16-1625(1)(a) but did not do so. Jane has remained in the Department's custody pursuant to that decree ever since. The review hearing order did not result in a change of custody, and thus, did not "vest" custody in the Department because it already had custody. The order merely recited "[t]he child is currently in the custody of IDHW, and it is in the best interest of the children [sic] to remain in the custody of IDHW."

Because there is no basis to hold that custody vested at a time other than when the adjudicatory decree was initially entered in this case, the review hearing order is not an order that vests legal custody of Jane in the Department. Thus, we conclude that section 16-1625(1)(b) does not provide the district court with appellate jurisdiction.

### 2. A change in permanency goals does not authorize or mandate the Department to cease reasonable efforts toward reunification.

Idaho Code section 16-1625(1)(c) provides that any party may appeal from "any order subsequent to the adjudicatory decree that authorizes or mandates the Department to cease reasonable efforts to make it possible to return the child to his home. . . ." I.C. § 16-1625(1)(c). Consistent with the district court's findings, the Department contends that because the Department

did not request and the magistrate court did not authorize a suspension of reunification efforts, Idaho Code section 16-1625(1)(c) does not apply. Mother argues that the change in permanency goals effectively authorizes and mandates that the Department cease its reasonable reunification efforts and that, because the change in permanency goals allows the State to start the process of terminating her parental rights under section 16-1624(3), the appeal to the district court was allowed under section 16-1625(1)(c).

While the practical impact of the change of reunification goals is to focus the Department's efforts on adoption rather than reunification, nothing in the magistrate court's order authorizes or mandates that the Department stop working toward the concurrent goal of reunification. In fact, the transcript from the review hearing shows that the magistrate court wanted visitation to continue for Mother and Jane and that reunification would remain a concurrent goal of the plan.

The CPA contemplates both a primary and concurrent goal and expressly addresses when the Department may cease efforts toward reunification. First, in section 16-1621, the Act provides that at the initial case plan hearing, a permanency plan must include both a reunification goal and a concurrent goal, along with plans to accomplish both. I.C. § 16-1621(3)(d). Section 16-1621 further explains that the "concurrent plan" shall address all placement options, address advantages and disadvantages of those options, and identify actions to implement the option among other requirements. Moreover, section 16-1621(d)(6) requires that once a case plan is approved by the court and entered as an order, that order shall "require the department to simultaneously take steps to accomplish the goal of reunification *and the concurrent permanency goal*." I.C. § 16-1621(d)(6) (emphasis added).

Next, section 16-1622 provides that upon an annual review hearing, permanency plans can have both primary and concurrent goals. I.C. § 16-1622(2)(a). It goes on to clarify that the "court may authorize the department to suspend further efforts to reunify the child with the child's parent, pending further order of the court, when a permanency plan is approved by the court and the permanency plan does not include a permanency goal of reunification." I.C. § 16-1622(2)(k). Section 16-1624(6) of the CPA provides that the "court may authorize the department to suspend further efforts to reunify the child with the child's parent, pending further order of the court, when a petition to terminate parental rights has been filed with regard to the child." I.C. § 16-1624(6).

In this matter, the case plan for Mother complied with section 16-1621(d)(6) because it included both a primary and concurrent goal and a plan for both of them with steps towards both

goals to be taken simultaneously. While a petition to terminate parental rights was filed by the Department after entry of the review hearing order, nowhere in that petition or in this case has the magistrate court authorized the Department to suspend further efforts to reunify in response to that petition. Because the review hearing order does not authorize or mandate the Department to cease reasonable efforts toward reunification, we hold that section 16-1625(c) does not apply, and the district court correctly determined that it was without appellate jurisdiction.

**B. Mother's due process rights are not violated by a lack of immediate appellate review.**

Mother contends that a lack of viable appeal rights is an affront to her due process rights under the United States Constitution. She argues: "Mother, like all parents, [has] the fundamental right to the care, custody and control of her child. That fundamental right is effectively taken away when the permanency goals are changed from reunification to termination and adoption." (Citations omitted.) Mother's claim sweeps too broadly.

To begin, Mother's claim that there are no appeal rights when a permanency goal is changed from reunification to termination and adoption reflects the appeals process established by the legislature. As explained, there is a right to appeal if the magistrate court enters an order authorizing or mandating the Department to stop reunification efforts. At no time did the magistrate court enter such an order in this case. In fact, the transcript from the review hearing revealed the magistrate court continued to encourage Mother to comply with the case plan and work toward reunification:

> Every conversation we've had… [Mother] was saying it was really hard and that she questioned whether she should stay [in the program]. And now we have -- although we have proof of some sobriety, we still have proof of instability, ongoing instability. Things are taking a lot longer than they should and continual prompting and hand holding by the attorney and the Department and CASA to help [Mother], because we all want her to be successful. Did everything we could to encourage her to stay at [the program]. But, in my opinion, as of the April hearing, she had already decided she was going to leave and talked herself into it. And I -- after all the effort to get you into a long-term program where you would, after Phase 1, then be phasing into overnight visits, it was very disappointing, and I was very saddened by it.
>
> [It] was pretty tough on you, no doubt, saying, nope, we're not going to do that until you get into another phase because you need to get past this first phase. We need to get you longer in the program, trying to provide that motivation. Now we have a housing voucher that hasn't been filled out, hasn't been completed because there were barriers there. We have the person you're living with who hasn't bothered to call the landlord back to give you a good reference. And that was June 14th when you applied. So that's over two weeks. We have -- we kind of had to

7

drag you back into treatment, which recommended intensive outpatient three times a week. I know that you can succeed, but you have this resistance to fully wanting to stick with the case plan.

So, I'm going to change the goal because I do not see compelling circumstances. I saw it when you were at [the program]. I saw a light at the end of the tunnel. I don't see it at this point. Maybe two years down the road, but this child needs permanency one way or the other long before that. In other words, there has been progress, but not substantial progress. And I see this latest -- the latest progress as some, but not substantial. A setback, really, is what I see it as. And there's nothing you can do about your medical condition, [Mother]. I hope that that turns out for you. I wish the best for you on that. But I've got to change the permanency goal to [termination of parental rights] with adoption.

Reunification efforts remain a secondary goal, the concurrent goal, because we want to still encourage you to continue to work hard and get that housing and get your medical taken care of, continue in treatment, continue to have those negative UAs and work on long-term stability.

In addition, as the Idaho Court of Appeals has explained, there are multiple stages at which a parent may challenge the Department's failure to make reasonable efforts to reunify:

> The Department's reasonable efforts, and a magistrate court's findings regarding reasonable efforts, are subject to appellate review. There is a statutory right to appeal at several points during the pendency of the child protection proceeding. I.C. § 16-1625(1). An aggrieved parent may appeal an adjudicatory decree, any order subsequent to the adjudicatory decree that vests legal custody in the Department, and any order subsequent to the adjudicatory decree that authorizes or mandates the Department to cease reasonable efforts. *Id.* Although Doe acknowledges that review of reasonable efforts is provided for in the child protection case pursuant to I.C. § 16-1625(1), she does not explain why this review does not satisfy due process. It appears Doe's argument is instead premised on a preference for review of reasonable efforts following termination rather than from the appealable orders entered following proceedings during the child protection case in which reasonable efforts are required. This preference does not, however, implicate due process. Moreover, it is contrary to the statutory scheme enacted by the legislature.

*Matter of Doe I*, 166 Idaho 357, 360–61, 458 P.3d 226, 229–30 (Ct. App. 2020). Like the mother in *Matter of Doe I*, Mother has not explained why the statutory framework that is provided in Idaho Code section 16-1625(1) does not satisfy the process she is due.

Finally, and perhaps most importantly, we recently rejected the same type of due process argument Mother makes here because even if the Department moves forward with a petition to terminate Mother's parental rights, it must prove the basis for termination by clear and convincing evidence:

Here, the parents stipulated to jurisdiction under the CPA and the court placed the children in the Department's legal custody. Thereafter, the Department had the statutory authority to petition for termination. I.C. § 16-1624(1). Once the Department petitioned to terminate Mother's parental rights, the Department still had to prove the statutory basis for termination by clear and convincing evidence. I.C. § 16-2005. Thus, her due process rights were protected. Accordingly, Mother fails to present a compelling argument for why a lack of immediate appellate recourse for a court's determination of the Department's reasonable efforts impacts her due process rights for termination of parental rights.

*Matter of Doe I*, 164 Idaho 883, 890, 436 P.3d 1232, 1239 (2019).

On a final note, Mother has requested "guidance" from this Court on the issue of whether Mother had a right to pursue a permissive appeal to this Court under Idaho Juvenile Rule 49 and Idaho Appellate Rules 11.1 and 12.1. Because no motion for a permissive appeal to this Court was filed and Mother has not pursued any contention that the district court had jurisdiction to undertake a permissive appeal, we decline to issue what would be, in effect, an advisory opinion under the guise of "guidance." However, we will refer this question to the Child Protection Committee for further study because in reviewing Rules 11.1(b)(2) and 12.1(a)(2), we noted that the "final judgment" language used in those rules does not appear to be consistent with the language used in Idaho Juvenile Rule 49 and Idaho Code section 16-1625(1).

### III.    CONCLUSION

Based on the foregoing, we affirm the district court's decision to dismiss the appeal and remand the case with instructions to remand to the magistrate court for further proceedings consistent with this opinion.

Chief Justice BEVAN, and Justices STEGNER, MOELLER and ZAHN, CONCUR.